## E.I. DU PONT DE NEMOURS & CO.

### v.

## STATE TAX ASSESSOR.

Supreme Judicial Court of Maine.

Argued Nov. 3, 1995.
Decided April 9, 1996.

Sarah H. Beard (orally), Daniel M. Snow, Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Portland, for Petitioner.

John S. Kaminski, Jerrol A. Crouter, Drummond, Woodsum & MacMahon, Portland, for amicus curiae Tambrands.

Paull Mines, Washington, DC, for amicus curiae Multistate Tax Commission.

Andrew Ketterer, Attorney General, Clifford B. Olson (orally), Assistant Attorney General, Augusta, for Respondent.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA and LIPEZ, JJ.

LIPEZ, Justice.

This case is on report from the Superior Court (Kennebec County, *Alexander, J.*) pursuant to M.R.Civ. 72(a) and (c). We are asked to revisit our decision in *Tambrands, Inc. v. State Tax Assessor*, 595 A.2d 1039 (Me.1991) and determine whether the apportionment formula adopted by the State Tax Assessor in response to our decision in *Tambrands*, the so-called "Augusta Formula," violates either the Maine Tax Statutes or the United States Constitution's Due Process Clause or Foreign Commerce Clause[1] to the extent that it continues to permit Maine to include foreign-source dividends in the computation of the taxable income of a Maine-nexus corporation. We conclude that the apportionment formula does not violate the statutes or the Constitution.

E.I. Du Pont de Nemours and Company (Du Pont) is a multinational unitary business[2] qualified to conduct business in the state of Maine. From 1985 through 1987 Du Pont excluded from its apportionable income on its Maine corporate income tax return dividends received from its foreign subsidiaries.

Maine determines what portion of a multi-jurisdictional corporation's income is apportionable to the corporation's business activity in Maine by using what is commonly referred to as the "water's edge combined reporting method." *See* 36 M.R.S.A. § 5244 (1990). Under this method of reporting and apportionment the state does not look beyond the water's edge—that is, beyond the geographic boundaries of the United States—in determining what activities are appropriately considered part of the unitary business.[3] Additionally, three apportionment factors are calculated in the following manner: the value of the property used by the unitary business in Maine is divided by the value of the domestic property of the unitary business, the amount of sales made by the business in Maine is divided by the sales of the domestic unitary business, and the Maine payroll of the business is divided by the payroll of the domestic unitary business. 36 M.R.S.A. §§ 5102(8), 5211 (1990). The sum of the property, sales, and payroll factors is divided by three to yield an apportionment ratio. 36 M.R.S.A. § 5211(8). The Maine net income is then determined by multiplying "that part of the federal taxable income of the entire group which derives from the unitary business" by the apportionment ratio. *See* 36 M.R.S.A. § 5102(8).[4]

---

1. U.S. CONST. art. I, § 8, cl. 3 provides that "The Congress shall have the power ... To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes[.]" "Limits on state authority to tax foreign commerce are implicit in the commerce clause's grant of congressional power to regulate foreign commerce." LAURENCE H. TRIBE, AMERICAN CONSTITUTIONAL LAW 469 (2d ed. 1988).

2. A unitary business "means a business activity which is characterized by unity of ownership, functional integration, centralization of management or economies of scale." 36 M.R.S.A. § 5102 (10–A)(1990).

3. The water's edge reporting method differs from the worldwide combined reporting method. Worldwide combined reporting is an accounting method by which the taxable income of a unitary business is determined for state tax purposes by multiplying the combined income of the worldwide group of a multijurisdictional corporation engaged in the unitary business by the ratio of the unitary business's property, payroll, and sales in a given state to the total property, payroll and sales of the unitary business everywhere. Thus,

under a worldwide combined reporting method the state aggregates the income of all corporate entities composing the unitary business including both domestic affiliates and those operating abroad. *Barclays Bank v. Franchise Tax Bd.*, — U.S. —, —, 114 S.Ct. 2268, 2273, 129 L.Ed.2d 244, 254 (1994).

4. Title 36 M.R.S.A. § 5102(8) (1990) states

**8. Maine net income.** "Maine net income" means, for any taxable year, for any corporate taxpayer, the taxable income of that taxpayer for that taxable year under the laws of the United States as modified by section 5200–A and apportionable to this State under [36 M.R.S.A. § 5210 *et seq.*]. To the extent that it derives from a unitary business carried on by 2 or more members of an affiliated group, the Maine net income of a corporation shall be determined by apportioning that part of the federal taxable income of the entire group which derives from the unitary business, except income of an 80–20 corporation.

For a more extensive discussion of the mechanics of the Maine tax scheme see *Tam-*

In calculating its Maine net income for the calendar years 1985–87. Du Pont treated the dividends paid to it by its foreign subsidiaries as not allocable to its apportionable business income and therefore deducted its foreign subsidiary dividends from its apportionable business income. The State Tax Assessor (the Assessor), after an audit, assessed against Du Pont $156,586.59 in taxes, interest, and penalties for the calendar years 1985–87 on the ground that Du Pont's foreign subsidiary dividends should have been included in its tax base.

Du Pont requested administrative reconsideration of the assessment pursuant to 36 M.R.S.A. § 151 (Supp.1995).[5] On reconsideration, applying the "Augusta Formula," adopted in response to our decision in *Tambrands, Inc. v. State Tax Assessor*, 595 A.2d 1039 (Me.1991), the Assessor affirmed his audit determination that Du Pont's foreign dividend income was includable.

The Assessor developed the "Augusta Formula" to satisfy our instruction in *Tambrands* "to include additional factors in the apportionment formula that would fairly represent Tambrands' business activity." *Id.* at 1045. Under the Augusta Formula, the Assessor

(A) Determines the Taxpayer's taxable income using Maine's statutory water's edge method with foreign source dividends included in the taxpayer's apportionable business income.

(B) Determines the Taxpayer's taxable income using the worldwide combined reporting method (the "worldwide leg").

(C) Determines the Taxpayer's taxable income using Maine's statutory water's edge method without foreign source dividends included in the taxpayer's apportionable business income (the "dividend exclusion leg").

The result of calculation A becomes a cap, the result of calculation C becomes a floor, and the Assessor determines taxable income in the following manner: if

B>A: The taxpayer pays the amount calculated under Maine's water's edge statute with foreign subsidiaries dividends included and no factor relief;

B<C: The taxpayer pays the amount calculated under Maine's water's edge reporting method with the foreign subsidiaries dividends excluded and no factor relief;

A>B>C: The taxpayer pays the amount calculated under the worldwide reporting method and the Assessor provides factor relief, *i.e.* adjusts the denominators of the payroll, sales, and property factors to account for the inclusion of the foreign subsidiaries' dividends to reach this result.

In practice the Augusta Formula computes tax liability by using the worldwide reporting method as a way of checking the fairness of the Assessor's assessment of tax liability on the income of a multijurisdictional unitary business. When foreign dividends are included in a unitary business's income, the amount owed by the business will not exceed the amount computed under the worldwide combined reporting method. Because the Assessor determined that the worldwide re-

*brands, Inc. v. State Tax Assessor*, 595 A.2d 1039, 1041 (Me.1991).

**5.** Title 36 M.R.S.A. § 151 (Supp.1995) provides in pertinent part:

Any person who is subject to an assessment by the State Tax Assessor or entitled to receive notice of a determination of the State Tax Assessor and who is aggrieved as a result of that action may request in writing, within 30 days after receipt of notice of the assessment or determination, reconsideration by the State Tax Assessor of the assessment or determination.

· · · · ·

The State Tax Assessor's decision on reconsideration constitutes final agency action that is subject to review by the Superior Court in accordance with the Maine Administrative Procedures Act, except that Title 5, sections 11006 and 11007 do not apply. The Superior Court shall conduct a de novo hearing and make de novo determination of the merits of the case. It shall make its own determination as to all questions of fact or law. The Superior Court shall enter such orders and decrees as the case may require. The burden of proof is on the taxpayer.

porting method resulted in greater tax liability for the years 1985, 1986 and 1987, the Assessor computed Du Pont's tax liability using the water's edge reporting method with the foreign subsidiaries' dividends included and no factor relief.

After the Assessor upheld his assessment, Du Pont sought de novo review in the Superior Court of the Assessor's determination pursuant to 5 M.R.S.A. § 11002 (1989), 36 M.R.S.A. § 151 and M.R.Civ.P. 80C. Du Pont brought a multi-count complaint alleging that the Assessor's calculation of its income tax violated state statutes and the state and federal constitution. By consent of the parties, the court entered a partial judgment disposing of a majority of the counts, some favorably to Du Pont and some favorably to the Assessor. The court subsequently granted Du Pont's motion for a summary judgment on the remaining counts, finding that even with the application of the Augusta Formula the Maine taxing scheme continued to discriminate against foreign commerce. In its original order, the court remanded the case to the Assessor to determine a constitutionally permissible means of factor relief. With the agreement of Du Pont, however, the Assessor moved to report this case to us pursuant to M.R.Civ.P. 72(a) and (c) and the court granted the motion.

The Assessor argues that we must vacate the court's grant of summary judgment, contending that the court erred in its analysis and application of the United States Supreme Court's decision in *Kraft General Foods v.* *Iowa Dep't of Revenue*, 505 U.S. 71, 112 S.Ct. 2365, 120 L.Ed.2d 59 (1992) and our decision in *Tambrands*. Du Pont asks us to affirm the court's grant of summary judgment and hold that exclusion of foreign dividends is the only statutorily and constitutionally permissible treatment of foreign dividends paid to a multijurisdictional unitary business.

### *The Augusta Formula and The Maine Tax Statutes*

■ Du Pont claims that the Assessor's use of the worldwide combined reporting method violates the second sentence of 36 M.R.S.A. § 5244.[6] In support of this position, Du Pont refers to portions of the legislative record in which legislators debated the passage of "An Act Providing for the Administrative Changes in Maine Tax Law." As indicated by its title, this Act was an omnibus law that enacted over twenty alterations to Maine's tax laws. *See* P.L.1983, ch. 571 (effective September 23, 1983). Included among its many sections was a provision that explicitly authorized the tax assessor to use combined or unitary reporting as a means of apportioning a multijurisdictional corporation's income. *Id.* § 17. The adoption of this method of apportionment dominated the legislative debate. 2 Legis.Rec. 1346–47, 1357–58 (1983). There is no indication in the legislative record that any of these provisions, including the amendment relied on by Du Pont,[7] precluded the Assessor from re-

---

6. Title 36 M.R.S.A. § 5244 (1990) provides:
   The combined report required by section 5220, subsection 5, shall include, both in the aggregate and by corporation, a list of the federal taxable income, the modifications provided by section 5200–A, the property, payroll and sales in Maine and everywhere as defined in [§ 5210] and the Maine net income of the unitary business. Neither the income nor the property, payroll and sales of a corporation which is not required to file a federal income tax return or of an 80–20 corporation may be included in the combined report.

7. House Amendment "A" to Committee Amendment "A" added the following line to section 5220:
   Neither the income nor the property, payroll and sales of a member corporation which is not required to file a federal income tax return shall be included in the combined report.

House Amend. A to Comm.Amend. A to L.D. 1398, No. H–412 (111th Legis.1983). This sentence was subsequently deleted from section 5220 and inserted into section 5244 at the time of section 5244's enactment. *See* P.L.1985, ch. 675 §§ 2–3.

The only discussion of this sentence, which Du Pont claims was "enacted specifically to ensure that Maine did not reach worldwide income," was the following exchange between Senator Collins and Senator Teague.

Senator COLLINS: ...
    I would be interested in two further answers if they should be available from the Committee on Taxation: One is whether or not this Bill has been amended to take care of the problems of the Fraser Paper Company?
Senator TEAGUE: ....
    As far as his other question, I think, was on the Fraser Paper Company. House Amendment "A" (H–412) takes care of the Fraser

sorting to the worldwide combined reporting method pursuant to the equitable apportionment provision of 36 M.R.S.A. § 5211(17).[8]

In fact, the legislative history of section 5244 supports the converse of Du Pont's contention. Section 5244 was adopted as part of "An Act to Limit Preferential Taxation Within a Unitary Business." L.D. 1764 (112th Legis.1986). The bill's statement of fact states in pertinent part that "[t]he bill ... clarifies the *reporting* requirements of corporations engaged in a unitary business." L.D. 1764, Statement of Fact (112th Legis.1986) (emphasis added). Additionally, section 5244 appears in that chapter of the Maine Tax Statutes sub-headed "Information Returns." Section headings in a statute may serve as an intrinsic aid to interpreting a statute and ascertaining the intention of the Legislature. *See* SUTHERLAND STAT. CONST. §§ 47.03, 47.14 (1992). Section 5244's legislative history and its appearance in the statutory chapter dedicated to the general and specific requirements for reporting of income belie the broader significance which Du Pont attempts to assign to this provision. Section 5244 simply sets forth the type of information that a corporation must provide on its combined report and does not limit the information that the Assessor may consider in determining appropriate factor relief for a corporation that claims its business activity was not accurately reflected by the standard three factor formula.

### The Foreign Commerce Clause and Kraft General Foods

■ In *Kraft General Foods, Inc. v. Iowa Dep't of Revenue and Finance*, 505 U.S. 71, 112 S.Ct. 2365, 120 L.Ed.2d 59 (1992), the Supreme Court held that Iowa's tax treatment of dividends received by a domestic parent corporation from foreign subsidiaries unconstitutionally discriminated against foreign commerce in violation of the Foreign Commerce Clause. The taxing scheme at issue in *Kraft* was similar to the one currently used in Maine in that Iowa used the federal tax system's calculation of corporate income as its starting point for determining a corporation's apportionable income. *Id.* at 74, 112 S.Ct. at 2367–68.

Pursuant to the federal tax statutes, a parent corporation is permitted to deduct from gross corporate income the dividends it received from domestic subsidiaries. 26 U.S.C.A. § 243 (West 1988 & Supp.1995) (this deduction is known as the dividends received deduction). Although parent corporations cannot deduct dividends paid by foreign subsidiaries from their gross income, the federal formula permits a tax credit for foreign income taxes paid by the subsidiary on the income from which the dividends were paid, and for the foreign taxes withheld from the dividends, to mitigate the consequences of international double taxation. 26 U.S.C.A. § 78 (West 1988 & Supp.1995). Alternatively, the federal system allows a taxpayer to deduct foreign income taxes imposed. 26 U.S.C.A. § 164 (West 1988 & Supp.1995).

Iowa included the foreign subsidiary's dividends in a corporation's gross income and permitted no corresponding deduction or credit for foreign taxes paid. *Kraft*, 505 U.S. at 76, 112 S.Ct. at 2368–69. Based on this scheme, the Supreme Court concluded that "the only subsidiary dividend payments taxed by Iowa are those reflecting the foreign business activity of foreign subsidiaries," and that the Iowa tax scheme violated the For-

---

Paper Company and takes care of all international subsidiaries of any national company. 2 Legis.Rec. 1357–58 (1983). While the answers of a committeeman to questions asked by members of the legislative body may be considered in construing the subsequently enacted law, it is impossible to determine with any certainty what construction was put on this amendment based on this brief exchange.

**8.** Title 36 M.R.S.A. § 5211(17) (1990) provides:

If the apportionment provisions of this section do not fairly represent the extent of the taxpayer's business activity in this State, the taxpayer may petition for, or the tax assessor may require, in respect to all or any part of the taxpayer's business activity, if reasonable

  A. Separate accounting;

  B. The exclusion of any one or more of the factors;

  C. The inclusion of one or more additional factors which will fairly represent the taxpayer's business activity in this State; or

  D. The employment of any other method to effectuate an equitable apportionment of the taxpayer's income.

eign Commerce Clause. *Id.* at 77, 112 S.Ct. at 2369.

Like Iowa, Maine includes the foreign subsidiary's dividends in Du Pont's gross income and permits no corresponding deduction or credit for foreign taxes paid. Maine, however, uses· a combined reporting method, while the Iowa system used a single entity reporting system.[9] Courts and commentators are divided on the significance of the taxing authority's use of the combined reporting method on the applicability of the Supreme Court's holding in *Kraft* to a challenged tax scheme. In the immediate wake of the Supreme Court's decision, commentators identified Maine's tax scheme as one of the taxing schemes subject to challenge as a result of *Kraft. See Wary States, Refund Claims, Uncertainties Seen After Supreme Court's Kraft Ruling,* Daily Rep. for Executives (BNA) (Monday, June 22, 1992); James R. Potts, *State Taxing Schemes Discriminating in Violation of the Foreign Commerce Clause:* Kraft General Foods, Inc. v. Iowa Dep't of Revenue and Finance, 46:2 TAX LAW. 555 (1993). The highest courts of two states have addressed the applicability of *Kraft* to challenges to their taxing methods, and have reached opposite conclusions. Most recently, in *Dart Industries, Inc. v. Clark,* 657 A.2d 1062 (R.I.1995), the Rhode Island Supreme Court struck down that state's corporate taxing scheme, concluding that Rhode Island's tax statutes [10] contained the same "fatal flaw" that was present in the Iowa statute, *i.e.,* a facial preference for domestic commerce over foreign commerce. *Id.* at 1066. In *Appeal of Morton Thiokol,* 254 Kan. 23, 864 P.2d 1175 (1993), the Kansas Supreme Court found Kansas' use of a domestic combined reporting method [11] dispositive in its determination that *Kraft* was inapplicable to a taxpayer's challenge that Kansas's taxing

scheme unconstitutionally discriminated against foreign commerce. *Id.* at 1186.

We find the reasoning of the Kansas Supreme Court persuasive. Indeed, as Kansas's high court points out, "*Kraft* does not address the taxation of foreign dividends by domestic combination states." *Id.* In *Kraft,* the Supreme Court considered the constitutionality only of Iowa's single entity reporting system. *Kraft,* 505 U.S. at 74 n. 9, 112 S.Ct. at 2367 n. 9. Pursuant to this taxing method Iowa directly taxed neither the income nor dividends of a domestic subsidiary if the subsidiary did not do business within the state. Iowa, however, did tax the dividends paid by the foreign subsidiary to the domestic parent. *Cf. Kraft,* 505 U.S. at 74, 112 S.Ct. at 2367–68 (stating that Iowa is not a state that taxes an apportioned share of the entire income of a unitary business nor does it directly tax the income of a subsidiary unless the subsidiary itself does business in Iowa). In contrast, the combined reporting method by definition includes within the amount apportioned to Maine part of the income earned by the unitary business's domestic subsidiaries. With the taxpayer's federal tax figures as the starting point, Maine effectively captures some of the value of the business activity of the domestic subsidiaries by directly taxing an apportioned part of the domestic subsidiary's income. Having captured this value, the Assessor does not add the domestic subsidiary's dividends back into the parent's apportioned income. With respect to the dividends of foreign subsidiaries, however, Maine's use of the water's edge combined reporting method limits the State to the nation's boundaries in calculating corporate income, and hence no income of foreign subsidiaries is apportioned to Maine. The Assessor adds the dividends paid by the foreign subsidiaries to the domestic parent because these dividends represent value

9. Pursuant to single entity reporting only the values of a single business's activities within the state are reflected in the taxpayer's tax base. The taxing authority carves out from the taxpayer's overall business those activities taking place in, the property employed in, and the income derived from sources within a single state to determine the income attributable to the state. The various subsidiaries of a multijurisdictional enterprise are viewed as separate from one an-

other and the income of the affiliates that do not do business in the state are not considered in the income of the "single entity." JEROME R. HELLERSTEIN & WALTER HELLERSTEIN, STATE AND LOCAL TAXATION 432 (4th ed. 1978).

10. *See* R.I. GEN.LAWS § 44–11–11 (1995).

11. *See* KAN.STAT.ANN. § 79–3279 (1994).

earned by the parent that is not otherwise captured.

Far from discriminating against foreign commerce, Maine's water's edge combined reporting method provides a type of "taxing symmetry" that is not present under the single entity system. Although the dividends paid to parent corporations with domestic subsidiaries are not taxed, the apportioned income of the domestic subsidiaries is subject to tax. Because the income of the unitary domestic affiliates is included, apportioned, and ultimately directly taxed by Maine as part of the parent company's income, the inclusion of dividends paid by foreign subsidiaries does not constitute the kind of facial discrimination against foreign commerce that caused the Supreme Court to invalidate Iowa's tax scheme in *Kraft*. Thus, Maine's use of a water's edge combined reporting method distinguishes Maine's taxing scheme from the scheme invalidated by the United States Supreme Court in *Kraft*.

### Tambrands Revisited

■ Having determined that the Augusta Formula does not discriminate against foreign commerce, we must now determine whether the tax assessed against Du Pont under the Augusta Formula violates the Due Process Clause. To withstand constitutional scrutiny the challenged taxing method must, among other things, be "fairly apportioned." *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 279, 97 S.Ct. 1076, 1079, 51 L.Ed.2d 326 (1977). To determine whether the Augusta Formula results in a "fair" apportionment, we must necessarily revisit the Supreme Court's internal consistency test and our application of that test in *Tambrands v. State Tax Assessor*, 595 A.2d 1039 (Me.1991).

In *Container Corp. of America v. Franchise Tax Bd.*, 463 U.S. 159, 169, 103 S.Ct. 2933, 2942, 77 L.Ed.2d 545 (1983), the Supreme Court observed that the Due Process Clause and Commerce Clause require that the states be "fair" in applying apportionment formulas to determine how much of the business's income they may tax. A fair apportionment formula demonstrates both internal and external consistency. *Id.* With respect to internal consistency the Court de-

clared: "The first, and ... obvious, component of fairness in an apportionment formula is what might be called internal consistency—that is, the formula must be such that, if applied by every jurisdiction, it would result in no more than all of the unitary business' income being taxed." *Id.* A formula ceases to be internally fair when, if theoretically applied across all taxing states, it inevitably would subject a multijurisdictional enterprise to taxation of more than 100% of its tax base. *See Oklahoma Tax Comm'n v. Jefferson Lines*, —— U.S. ——, ——, 115 S.Ct. 1331, 1338, 131 L.Ed.2d 261, 271 (1995) (the internal consistency test "asks nothing about the degree of economic reality reflected by the tax, but simply looks to the structure of the tax at issue to see whether its identical application by every State in the Union would place interstate commerce at a disadvantage as compared with commerce intrastate."). *See also Goldberg v. Sweet*, 488 U.S. 252, 261, 109 S.Ct. 582, 588–89, 102 L.Ed.2d 607 (1989) ("[T]o be internally consistent a tax must be structured so that if every state were to impose an identical tax, no multiple taxation would result. Thus, the internal consistency test focuses on the text of the challenged statute and hypothesizes a situation where other states have passed an identical statute."); *Armco Inc. v. Hardesty*, 467 U.S. 638, 644–45, 104 S.Ct. 2620, 2623–24, 81 L.Ed.2d 540 (1984) (internal consistency test requires that tax at issue be evaluated on its own merits without regard to taxes that may or may not actually be imposed by other jurisdictions); *Container Corp.*, 463 U.S. at 188, 103 S.Ct. at 2952 (finding that taxing scheme that resulted in multiple taxation was not internally inconsistent where such double taxation was not inevitable) (citing *Japan Line, Ltd. v. County of Los Angeles*, 441 U.S. 434, 447, 99 S.Ct. 1813, 1820–21, 60 L.Ed.2d 336 (1976)).

In *Tambrands*, Tambrands and its foreign affiliates conducted a horizontally and vertically integrated unitary business. 595 A.2d at 1040. Tambrands received dividends from the earnings of the portion of the unitary business conducted by its foreign affiliates. *Id.* The Assessor assessed an income tax against Tambrands based on the inclusion of

the foreign dividends in Tambrands' apportionable business income, without considering the property, payroll, or sales of the foreign affiliates. *Id.* We concluded that this omission led to an overstatement of in-state income by understating the denominators of the three fractions contained in the numerator of the three factor formula, and hence the Assessor's approach flunked the internal consistency test because its application by all jurisdictions would result in the taxation of more than 100% of the taxpayer's income. *Id.* at 1045–47.

Two of the leading authorities in the area of state taxation have criticized our application of the internal consistency test in *Tambrands.*

> The error in the Maine court's application of the internal consistency test was that it was applied to taxes imposed on two different sets of taxpayers—Tambrands and its subsidiaries—not merely to a tax imposed on Tambrands. If there is an objection to such taxation, it is that the same income is taxed twice, once to the corporation and again to the stockholder. The internal consistency test deals, however, only with taxes that may be imposed on the same taxpayer by various States. The Maine court thus improperly applied the test of that State's taxation of Tambrands' dividends and the tests of other jurisdictions on the foreign source income of the subsidiary.

*See* 1 JEROME R. HELLERSTEIN & WALTER HELLERSTEIN, STATE TAXATION ¶ 9.13[3][a] (2d. ed. 1993 & Supp.1994). It is now clear to us that in applying the internal consistency test in *Tambrands,* we improperly applied the test to two different taxpayers—Tambrands and its subsidiaries—rather than to just Tambrands. Moreover, by misidentifying the taxpayer in our application of the internal consistency test in *Tambrands* we insured that no apportionment method other than complete exclusion of the foreign subsidiaries' income and dividends would satisfy the test. In *Tambrands* we unnecessarily injected the issue of "internal consistency" into a dispute which, much like the present one, was not a question of "multiple taxation," but rather a question of the taxation of

extraterritorial value. As the Hellersteins concluded:

> Considering the case from a broader constitutional and policy point of view, taxation by one State of the income of a subsidiary doing business within its borders and taxation by another State of its parent company that does business within that State on dividends paid by the subsidiary out of its earnings are part of a long-accepted and established practice in State corporate taxation. Such taxation does not constitute the type of multiple taxation that is prohibited by the Commerce Clause, and there is no Supreme Court decision, including the cases dealing with the internal consistency doctrine, that invalidate such levies.

*Id.* Thus, our discussion of the internal consistency test in *Tambrands* was superfluous. We therefore abandon the internal consistency analysis set forth in *Tambrands.*

At the same time, we reaffirm the ultimate conclusion in *Tambrands* that the Assessor's failure to adjust a taxpayer's apportionment factors to reflect the taxpayer's activities both within and without the state of Maine may result in the taxation of extra-territorial value and, therefore, may run afoul of the fairness principles of the Due Process Clause. Thus, we review the Assessor's Augusta Formula to determine whether it ensures that Du Pont's tax liability "fairly represents" its business activity in the state of Maine consistent with constitutional due process. *Id.*

The Assessor developed the Augusta Formula pursuant to the discretionary authority afforded him by 36 M.R.S.A. § 5211(17). Generally referred to as the equitable apportionment section of the Uniform Division of Income for Tax Purposes Act (UDITPA), the purpose of this section, according to its drafter, was to permit the tax assessor to deviate from the prescribed three factor apportionment method in those exceptional circumstances where use of the three factor formula presented "constitutional problems" or failed to accurately reflect a corporation's income due to the corporation's unique characteristics. *See Uniform Division of Income for Tax Purposes Act,* U.L.A.

*available on* Westlaw, ULA Database; William J. Pierce, *Uniform Division of Income for State Tax Purposes,* 35 TAXES 747, 748 (1957). *See also Twentieth Century–Fox Film Corp. v. Department of Revenue,* 299 Or. 220, 700 P.2d 1035, 1039–40 (1985) (stating that relief under this section of UDITPA is only available in two situations: (1) to remedy unconstitutional results, or (2) to provide an alternative means of apportionment where three factor formula does not fairly represent the business activity of taxpayer). Courts have construed this section of the UDITPA to vest broad discretion in the tax assessor to consider additional factors when deviation from the statutory method is necessary. *See, e.g., McDonnell Douglas Corp. v. Franchise Tax Bd.,* 69 Cal.2d 506, 72 Cal.Rptr. 465, 469, 446 P.2d 313, 317 (1968). Pursuant to the statute, the adjustments may range from separate accounting to exclusion of one or more factors, and inclusion of other factors, or to any other method that effectuates "an equitable allocation and apportionment of the taxpayer's income." *See* 36 M.R.S.A. § 5211(17). Therefore, when the taxpayer, as here, contends that the formula ultimately adopted by the tax assessor is arbitrary and reaches unreasonable results, the burden is on the taxpayer to establish such facts by clear and convincing evidence. *McDonnell Douglas Corp.,* 72 Cal.Rptr. at 468, 446 P.2d at 316.

A state is faced with an almost impossible task in assuring that a multijurisdictional business shoulders its fair share of the burden of taxation. The United States Supreme Court has noted that arriving at precise territorial allocations of "value" is often an elusive goal both in theory and in practice, *Container Corp. of America v. Franchise Tax Bd.,* 463 U.S. 159, 182, 103 S.Ct. 2933, 2949, 77 L.Ed.2d 545 (1983), and hence, rough approximation rather than precision is sufficient as a matter of practical tax administration. *International Harvester Co. v. Evatt,* 329 U.S. 416, 422, 67 S.Ct. 444, 447, 91 L.Ed. 390 (1946). Indeed, "[e]very method of allocation devised involves some degree of arbitrariness." *Barclays Bank v. Franchise Tax Bd.,* — U.S. —, —, 114 S.Ct. 2268, 2269, 129 L.Ed.2d 244, 253 (1994).

The Augusta Formula simply adopts the worldwide reporting method as a means of verifying the fairness of the tax liability of the unitary business as established by the tax assessor. The worldwide reporting method is widely acknowledged as a fair and accurate method of estimating a multijurisdictional corporation's taxable business activities in the state, and the Supreme Court has repeatedly upheld the constitutionality of this method of accounting. *See e.g. Barclays Bank v. Franchise Tax Bd.,* — U.S. —, 114 S.Ct. 2268, 129 L.Ed.2d 244 (1994); *Container Corp. of America v. Franchise Tax Bd.,* 463 U.S. 159, 103 S.Ct. 2933, 77 L.Ed.2d 545 (1983). Pursuant to the worldwide reporting method, the state takes into account the property, payroll, and sales for the unitary business in the taxing jurisdiction as fractions of the total worldwide property, payroll, and sales. The sum of these fractions is then averaged and multiplied against the unitary business's total income producing an apportioned amount of taxable income. *See generally,* Irene Cannon–Geary, Note, *State Worldwide Unitary Taxation: The Foreign Parent Case,* 23 COLUM.J.TRANS-NAT'L L. 445 (1985).

The worldwide computation includes in the denominators of the three apportionment factors the property, payroll, and sales of the dividend-paying foreign subsidiary whose dividends are included in the domestic parent corporation's tax base. Under the Augusta Formula, the tax assessed to a multijurisdictional corporation will exceed the amount calculated under the worldwide reporting method only in those instances when the tax calculated pursuant to the water's edge combined reporting method, with foreign source dividends *excluded,* is greater than the amount owed using the worldwide combined reporting method. Foreign dividends are included without any accompanying factor relief only in that instance when their addition yields a tax liability that is less than that calculated by the worldwide reporting method. Thus, each calculation pursuant to the Augusta Formula represents permissible means of insuring that the State in its assessment does not capture extraterritorial value, and that the assessed tax reasonably reflects the extent of a multijurisdictional taxpayer's

business activity in Maine. The fact that in some instances this calculation results in a higher tax, or that an alternate formula might result in a lower tax, does not change this result. Indeed, Du Pont implicitly concedes this point. In making its argument that the Augusta Formula is unreasonable, Du Pont does not suggest that an alternative formula would produce a more accurate apportionment. Rather, it urges the complete exclusion of foreign source dividends.

The Augusta Formula permits the Assessor to establish a level of taxation for a multijurisdictional unitary business between two constitutionally and statutorily permissible levels, and Du Pont's claim that its tax liability pursuant to the Augusta Formula may exceed its potential liability by some other formula does not undermine the validity of this method of apportionment. The Augusta Formula's use of the worldwide combined reporting method as a check on the tax assessed on the income of a multijurisdictional corporation with foreign subsidiaries was an appropriate response to our mandate in *Tambrands.*

The entry is:

Judgment on Counts I through IV and VI of Du Pont's petition for review vacated. Remanded for entry of a judgment affirming the decision of the State Tax Assessor with respect to Counts I through IV and VI.

WATHEN, C.J., and ROBERTS, GLASSMAN, RUDMAN, and DANA, JJ., concurring.

CLIFFORD, Justice, dissenting.

Because, in my view, the use of the Augusta formula does not comport with the unitary business concept on which Maine's statutory income tax scheme is based, and is contrary to the United States Constitution, I respectfully dissent.

The Augusta formula is inconsistent with the unitary business concept on which Maine's taxing scheme is based. Du Pont

and its affiliates make up an integrated unitary business. 36 M.R.S.A. § 5102(10–A); *see Tambrands, Inc. v. State Tax Assessor,* 595 A.2d 1039, 1040 n. 1 (Me.1991). Maine uses a "unitary business/formula apportionment method to determine the portion of the income of a corporation subject to taxation in more than one state or jurisdiction that is attributable to the corporation's business activities in Maine. That Maine-attributable income is taxed as Maine income." *Id.* at 1040–41. The apportionment method is based on the Uniform Division of Income for Tax Purposes Act (UDITPA). Pursuant to the unitary business concept, dividends paid by a foreign affiliate of the unitary business, because the foreign affiliate is part of the "single business enterprise," may be included, and properly so, in the income of the unitary business. *Mobil Oil Corp. v. Commissioner of Taxes,* 445 U.S. 425, 436–37, 100 S.Ct. 1223, 1231–32, 63 L.Ed.2d 510 (1980). The income of the unitary business is then apportioned to determine the amount subject to taxation by the taxing state. *Id.* at 438–39, 100 S.Ct. at 1232–33. The factors reflect accurately the business activity of a unitary business, and accordingly, the use of the three-factor apportionment formula has been approved for use by the states. *Container Corp. of America v. Franchise Tax Bd.,* 463 U.S. 159, 165, 103 S.Ct. 2933, 2940, 77 L.Ed.2d 545 (1983). Because the dividends from the foreign affiliate are included in the income of the unitary business to be apportioned, the apportionment formula should be consistent with the unitary business concept and reflect the factors attributable to the foreign affiliate by including at least a portion of the property, sales, and payroll of the foreign affiliate. This the Assessor's apportionment formula fails to do.[1]

[I]f the dividends are included in the apportionable base on the ground that the payor is a component of the taxpayer's unitary business conducted in the state, the argument for excluding the payor's factors appears to us to be weak. The

---

1. Pursuant to the Augusta formula, the taxpayer's taxable income is calculated under the Maine Water's edge statute with dividends from the foreign subsidiaries *included* in income to be apportioned, but with factors of those foreign

affiliates *not included* in the apportionment unless the taxable income so calculated exceeds the taxable income calculated if the worldwide reporting system were used.

unitary concept should carry through to all aspects of the tax computation if it is the foundation for the inclusion of the dividends in the apportionable base of the tax.

J. Hellerstein & W. Hellerstein, STATE TAXATION § 9.13(3)(b) (2d ed. 1993).

In *Mobil Oil Corp. v. Commissioner of Taxes*, 445 U.S. 425, 100 S.Ct. 1223, 63 L.Ed.2d 510 (1980), the issue of the noninclusion in the apportionment formula of the factors of Mobil's foreign subsidiaries and affiliates was not raised at the administrative level and therefore the majority of the United States Supreme Court did not address the issue. In a separate dissenting opinion, however, Justice Stevens did speak directly to that issue:

> Either Mobil's worldwide petroleum enterprise ... is all part of one unitary business, or it is not; if it is, Vermont must evaluate the entire enterprise in a consistent manner....
>
> . . . .
>
> "Obviously, if the foreign source income is involved in the base for apportionment, foreign property, payroll and sales must be included in the apportionment factors."

*Mobil Oil Corp.*, 445 U.S. 425, 461 & n. 16, 100 S.Ct. 1223, 1243 & n. 16 (quoting Rudolph, *State Taxation Of Interstate Business: The Unitary Business Concept And Affiliated Corporations*, 25 TAX L.REV. 191, 205 (1970)).

Maine has the authority to tax only the income of Du Pont that is earned in or attributable to the State of Maine. The Assessor's formula taxes extra-territorial value. Even if the formula is not contrary to the commerce clause pursuant to the elusive internal consistency test, it violates the fairness principles of the due process clause.

What we said in *Tambrands* is, in my view, equally applicable here:

> The purpose of formula apportionment is to determine the amount of a unitary business that is attributable to Maine by comparing the business activities everywhere and apportioning the business income accordingly. Those business activities are measured from the property, sales and payroll of the unitary business, factors that have been held to be reliable indicators of business activity.... The Assessor, however, removes from the factors in the formula, and thus from the apportionment, the property, payroll and sales figures that measure the business activity of the [f]oreign [a]ffiliate. The ineluctable result is that more of the business activity of the unitary business is attributable to Maine than is the actual case. Thus, the income taxable by Maine under the Assessor's formula does not truly reflect ... Tambrands' connection with Maine and fails to meet the test of fairness required by the due process clause....

*Tambrands*, 595 A.2d at 1044 (citations omitted).

> Unless the sales, payroll and property values connected with the production of the income by the payor corporation are added to the denomination of the apportionment formula, the inclusion of earnings attributable to those corporations in the apportion tax base will inevitably cause ... [Du Pont's Maine] income to be overstated.

*Mobil Oil Corp.*, 445 U.S. at 460–61, 100 S.Ct. at 1243 (*Stevens, J.*, dissenting).

That the Assessor tests the tax computed against a formula that insures that the tax assessed will not exceed a theoretical tax computed under a completely different formula that, in my view, is not authorized in our tax laws,[2] does not cure the defect.

---

**2.** One of the legs of the Augusta formula, the so-called worldwide leg, against which the tax is tested uses a method of taxation not authorized by Maine's statutory income tax scheme. Maine utilizes a water's edge combined reporting method of taxation. Title 36 M.R.S.A. § 5200 provides that the Maine income tax is imposed on Maine net income. Maine net income is federal taxable income apportioned to Maine. 36 M.R.S.A § 5102(8). Section 5244 in plain language prohibits "the income ... the property, payroll and sales of a corporation which is not

required to file a federal income tax return ... [from being] included in the combined report." Worldwide combined reporting apportions income for the *entire* unitary business, including all foreign affiliates, by the property, payroll, and sales of the *entire* unitary business. Because it apportions income from the entire unitary business and includes income of foreign affiliates, income that is *not* part of federal taxable income, the use of worldwide combined reporting is contrary to section 5244.

Although in part for different reasons, I agree with the Superior Court's decision that the Assessor's formula should not be used, and I would affirm.