No. 3-94-0830  

                                                                  

                   IN THE APPELLATE COURT OF ILLINOIS

                             THIRD DISTRICT

                               A.D., 1996

CATERPILLAR FINANCIAL SERVICES   )  Appeal from the Circuit Court

CORPORATION,                     )  of the 10th Judicial Circuit,

                                 )  Peoria County, Illinois       

       Plaintiff-Appellant,      )  

                                 )

                                 )

        v.                       )  No. 92-CH-42

                                 )

                                 )  

DOUGLAS WHITLEY, as Director     )

of the Illinois Department of    )

Revenue, PATRICK QUINN, as       )  

Treasurer of the State of        )  

Illinois, and the ILLINOIS       )  

DEPARTMENT OF REVENUE,           )  Honorable

                                 )  John A. Barra,

       Defendants-Appellees.     )  Judge, Presiding  

                                                                 

JUSTICE HOLDRIDGE delivered the opinion of the court:

                                                                  

     Benjamin Franklin is credited with the saying that in this

world nothing is certain but death and taxes.  However, we are

convinced that he never had to consider the following: are

royalties and interest paid to a domestic parent company by a

foreign subsidiary under the domestic "water's edge" combined

reporting method of apportioning income to be treated the same as

dividends paid between similar entities under the "single entity" 

apportionment method.  We have.  

     After a careful review of the record and the relevant case

law, and considering Dr. Franklin's advice that "haste makes

waste," we find that the Illinois "water's edge" apportionment

method does not unconstitutionally discriminate against interest

and royalty payments from foreign subsidiaries of domestic parent

corporations doing business in Illinois, and we affirm the holding

of the trial court.  

     The plaintiff, Caterpillar Financial Services Corporation

(CFSC), a wholly-owned domestic subsidiary of Caterpillar, Inc.,

brought this action in the circuit court of Peoria County against

the Department of Revenue, Douglas Whitley, Director of Revenue,

and Patrick Quinn, Treasurer of the State of Illinois,

(collectively referred to as "the Department") pursuant to "An Act

in relation to the payment and disposition of monies received by

officers and employees of the State of Illinois by virtue of their

office or employment."  30 ILCS 230/1 et seq. (Michie 1994)(Protest

Monies Act).  CFSC sought a refund of Illinois income tax paid

under protest to the Department of Revenue for tax year 1987.    

     The circuit court entered judgment for CFSC as to a portion of

the protested money, and entered judgment in favor of the

Department on the remainder of the fund.  CFSC appealed, and the

Department chose not to appeal that portion of the judgment in

favor of CFSC. The Department maintains, however, that CFSC's

appeal should be dismissed as an impermissible request for an

advisory opinion.  For the reasons discussed below, we affirm the

judgment of the trial court.       

     FACTUAL BACKGROUND

     Caterpillar, Inc. and its 52 domestic and foreign subsidiaries

operate as a unitary business group, engaged in the manufacture of

engines and earth-moving equipment and related marketing, financial

and service functions.  Of these entities, only Caterpillar, Inc.,

CFSC, and 13 other domestic subsidiaries engaged in business in

Illinois, and were thus required to file Illinois corporate income

tax returns.  No foreign subsidiary engaged in business in

Illinois.  

     Caterpillar, Inc. licenses its trademarks and technology to

foreign subsidiaries, granting those subsidiaries the right to

build and market products identical to those designed and

manufactured domestically.  In the licensing agreements, the

foreign subsidiaries are charged a license fee, or royalty, equal

to 5% of the foreign subsidiaries net sales.  Caterpillar, Inc. 

also has licensing agreements with its domestic subsidiaries,

however, these domestic subsidiaries are not charged a royalty.  In

addition, Caterpillar also enters into licensing agreements with

unrelated third parties, foreign and domestic, which may or may not

involve payment of a royalty to Caterpillar.        

     Caterpillar, Inc. and some domestic subsidiaries, including

CFSC, loan money to foreign subsidiaries, from which interest

payments are received.  It is undisputed by the parties that the

royalty and interest payments constitute "business income" as that

term is defined by section 1501(1) of the Illinois Income Tax Act

(IITA) (35 ILCS 5/101 et seq.(Michie 1994)).

     ILLINOIS COMBINED WATER'S EDGE METHOD

     Because a state may not constitutionally tax income earned

outside its borders, the income earned by each Illinois member of

the Caterpillar unitary group must be apportioned between Illinois

and other jurisdictions.  Container Corp. of America V. Franchise

Tax Board, 463 U.S. 159 (1983).  Illinois, like many other states,

has adopted the "combined water's edge method" to determine the

portion of unitary business income to attribute to income earned

within its borders.  35 ILCS 5/304(a)(Michie 1994).  Under this

method of reporting and apportionment, the state does not look

beyond the water's edge, i.e. beyond the geographical boundaries of

the United States, in determining what activities are appropriately

considered part of a unitary business.    

     In general terms, the Illinois combined water's edge method

multiplies the combined net income of domestic unitary corporations

by an apportionment percentage calculated using a three factor

formula.  The factors include property, payroll and sales.  The

total for each factor for the corporation subject to Illinois tax

is compared to the total for each factor for all domestic

corporations in the unitary group and is expressed as a fraction,

i.e. the numerator of each factor is the amount of Illinois

property, payroll or sales and the denominator of each factor is

the amount of all the domestic unitary group's property, payroll or

sales.  The sales factor is then double-weighted.  The percentages

determined by dividing each numerator by its denominator are

averaged and the combined net income of the domestic unitary group

is multiplied by the average percentage figure to determine the

amount of income allocated to Illinois.  

     Under the Illinois method of calculating "water's edge"

income, corporations that have 80% or more of their property and

payroll in foreign countries are not included in the unitary

business group.  See 35 ILCS 5/1501(a)(27) (Michie 1994).  As a

result, neither the income nor the factors (property, payroll,

sales) of the foreign businesses are included in the combined

apportionment calculation.       

     CATERPILLAR'S 1987 INCOME TAX RETURNS

     This appeal concerns CFSC's liability for Illinois corporate

income tax for 1987.  Caterpillar, Inc., CFSC, and all the other

domestic subsidiaries filed a consolidated federal income tax

return for the calendar year 1987.  Caterpillar, Inc., CFSC, and 13

of the domestic subsidiaries were engaged in business in Illinois. 

Each of these entities filed its own Illinois income tax return,

reporting its share of $364,799,967, which was the combined income

of the entire unitary business group.  This figure was arrived at

by making certain additions and subtractions to the combined

federal taxable income of the domestic members of the unitary

group.  Royalties and interest payments received from Caterpillar's

foreign subsidiaries were included in the Illinois base income. 

The Illinois reporting entities, including CFSC, deducted from

their base income $27,812,481, which was an amount equal to the

"Subpart F" income on the federal income tax return.

     In determining its Illinois apportionment factor for combined

water's edge reporting purposes, CFSC calculated the apportionment

factor utilizing the statutory method.  This process produced an

Illinois apportionment factor for CFSC of .001479 or less than two-

tenths of 1%.  That portion of the 1987 base federal taxable

income, excluding a claimed net operating loss deduction, was then

attributed to Illinois by CFSC as its income subject to state

taxation.      

     PROCEDURAL BACKGROUND

       On January 29, 1990, the Department issued a notice to CFSC

seeking additional taxes, penalties and interest for 1987.  The

Department notified CFSC that it had disallowed CFSC's deduction of

Subpart F income from its base taxable income.  The notice made no

mention of the net operating loss deduction also taken by CFSC.  

     As a result of this disallowance, the Department took the

position that CFSC had incorrectly calculated its taxable income 

and thus owed additional tax.  In response to the notice, CFSC

paid, under protest, $21,371.30 ($11,092.04 in tax, $5,539.57 in

penalties, and $4,739.69 in statutory interest).  

     On March 10, 1992, CFSC filed a three count complaint under

the Protest Monies Act.  In count I, CFSC alleged that the

Department's disallowance of CFSC's subtraction of Subpart F income

was in error, as Subpart F income could be subtracted as a

"dividend" pursuant to section 203(b)(2)(N) of the IITA.  35 ILCS

5/101 et seq.(West 1987).  In count II, CFSC alleged that the

Department's disallowance of a subtraction from base income for

Subpart F income was a violation of the Uniformity Clause of the

Illinois Constitution.  Ill. Const. 1970, art. IX, section 2.  In

count III, CFSC alleged that the inclusion of "foreign source

income" in base income grossly distorted the amount of CFSC's

income upon which CFSC's Illinois tax liability was calculated. 

CFSC defined "foreign source income" as not only Subpart F income,

but also interest and royalties received from foreign subsidiaries. 

Also in count III, CFSC sought relief pursuant to section 304(f) of

the IITA (35 ILCS 5/304(f) (West 1987), in the form of an order

that the Department include foreign property, payroll and sales in

the apportionment formula used to calculate CFSC's taxable income. 

     On January 28, 1993, CFSC filed an amended complaint in which

it added count IV, alleging that the Department's disallowance of

CFSC's deduction of Subpart F income as "dividends" violated the

Commerce Clause of the United States Constitution.  (U.S. Const.

Art. I, Sec. 8).  CFSC cited Kraft Foods v. Iowa Dept. of Revenue,

505 U.S. 71, 112 S.Ct. 2365, 120 L.Ed.2d 59 (1992).

     On May 23, 1993, the Department filed a motion to dismiss all

four counts of CFSC's complaint.  In the motion to dismiss, the

Department informed the court that in preparation for trial it had

discovered that of the $11,092.04 in tax paid under protest, only

$2,674 in tax assessed in the original notice was attributable to

disallowance of the deduction for Subpart F income.  The remainder

of the assessment was actually attributable to the disallowance of

a net operating loss claim, although the Department acknowledged

that the notice sent to CFSC failed to identify the denial of the

net operating loss as part of the basis for that notice.

     The Department declared that it was no longer interested in

asserting the disallowance of the Subpart F deduction, offered to

immediately release all money in the protest fund attributable to

the Subpart F issue, and asked the circuit court to dismiss as moot

CFSC's complaint as to the remaining money in the protest fund. 

The Department maintained that since the only issue CFSC protested

had been resolved, the circuit court no longer had jurisdiction

under the Protest Monies Act.  

     The circuit court denied the motion and the matter proceeded

to trial.  During trial, and in its post-trial brief, CFSC expanded

the theory articulated in count IV of the amended complaint.  CFSC

argued that, in addition to the Department's treatment of Subpart

F income, its treatment of CFSC's receipt of interest and royalty

payments also violated the Commerce Clause under Kraft.   

     The circuit court entered judgment on each count in the

complaint.  Judgment was granted in favor of CFSC on its treatment

of Subpart F income as a deductible dividend in computing Illinois

base income and the court ordered the Department to refund to CFSC

the taxes paid under protest with interest.  The circuit court

entered judgment for the Department on the question of including

foreign royalties and interest in the base income upon which

Illinois income tax was imposed, and on the question of whether the

application of the water's edge method discriminated against

foreign commerce in violation of the Foreign Commerce Clause.  CFSC

appealed the portion of the order in favor of the Department.  The

Department did not appeal the portion of the order in favor of

CFSC.  

     The record indicates, and the parties agreed at oral argument

before this court, that after the entry of judgment in favor of

CFSC on the Subpart F issue, some monies remained in the protest

fund;  the exact amount, however, appears to be unknown or subject

to dispute. 

     ANALYSIS              

Appellate Jurisdicti   on.

     As a preliminary matter, we first address the Department's

contention that this court lacks jurisdiction over CFSC's appeal. 

The Department claims that, under the Protest Monies Act, this

court does not have jurisdiction over this matter since under the

act, judicial remedy is limited "to questions which must be decided

by the court in determining the proper disposition of the moneys

paid under protest."  30 ILCS 230/2a (Michie 1994).  The Department

maintains that at the time the taxes were paid in protest, CFSC did

not base its protest on a claim that it was improperly denied the

opportunity to use royalties and interest payments from foreign

subsidiaries in the factors used to calculate its Illinois

apportionment formula.  

     The Department argues that any decision this court would issue

on the question of the constitutionality of the treatment of

foreign subsidiary royalties and interest payment would constitute

an advisory opinion only and could not provide CFSC any relief.  We

disagree.  Although the record is less than clear on whether any

money remains in the protest fund following the circuit court's

order granting CFSC judgment on the Subpart F issue, the parties

have represented to this court that after the refund some amount of

money will remain in the protest fund.

     We find, therefore, that funds still remain in the protest

fund over which the circuit court retains jurisdiction and this

court's ruling would effect those funds.  Thus, our decision would

effect an actual controversy and would not be an advisory opinion. 

People ex rel. Partee v. Murphy, 133 Ill. 2d 402, 407-08 (1990).

     We also find no authority to support the Department's position

that the Protest Monies Act limits CFSC to the theory of recovery

articulated at the time it paid the taxes under protest, and

nothing in the Protest Monies Act specifically precludes a taxpayer

from bringing any affirmative issue before the court in an effort

to recover funds that it has paid into the protest fund.  

     CFSC has cited a number of cases where a taxpayer changed its

position or amended its complaint after paying into the protest

fund.  See, General Telephone Co. v. Johnson, 103 Ill. 2d 363

(1984); Chicago & Illinois Midland Ry. Co. v, Department of

Revenue, 63 Ill. 2d 474 (1976).  While none of these cases

specifically so held, we find they support the general proposition

that a taxpayer can pay under protest into the fund and

subsequently raise any legitimate claim to establish its right to

a refund.  We hold, therefore, that we have jurisdiction over this

appeal.   

CFSC's Constitutional Argument.

     Turning to the merits of CFSC's appeal, CFSC maintains that

the Illinois combined water's edge method of apportioning the

combined income of a unitary business group for tax purposes,

systematically discriminates against foreign commerce as to

royalties and interest paid by foreign subsidiaries to parent

corporations with taxable income in Illinois, in violation of the

Foreign Commerce Clause of the United States Constitution.  (U.S.

Const. Art. I, Sec. 8).  

     In particular, CFSC maintains that the inclusion of interest

and royalties from foreign subsidiaries in the combined net income

base without the inclusion of foreign subsidiaries' property,

payroll and sales factors in the apportionment formula violates the

Foreign Commerce Clause.  In support of its position CFSC relies

entirely upon principles articulated by the United States Supreme

Court in Kraft.  

     In Kraft, Iowa allowed a deduction from base taxable income

for dividends paid to a parent company by a domestic subsidiary not

doing business in Iowa, while it did not allow a deduction from

base income for dividends paid to a parent company by a foreign

subsidiary not doing business in Iowa.  The Supreme Court held that

the fact that dividends received from a unitary business' foreign

subsidiaries were always treated less favorably than dividends

received from its domestic subsidiaries, constituted an

unconstitutional discrimination under the Foreign Commerce Clause. 

     CFSC maintains that the rationale of Kraft should apply to the

Illinois taxation of royalties and interest payments received from

foreign subsidiaries.  CFSC concludes that because the foreign

subsidiaries' factors (i.e. property, payroll and sales) are not

included in the apportionment fraction denominators, a larger

portion of the foreign payments to the unitary group are included

in Illinois allocable income, thus discriminating against foreign

commerce.  

     Since Kraft was issued, several other courts have been asked

to determine whether a given state's tax system discriminates

against foreign commerce in a manner prohibited by Kraft. 

Beginning with In re Morton Thiokol, Inc., 864 P.2d 1175 (Kan.

1993), upon which the circuit court relied in the instant matter to

find no constitutional violation, courts have limited the holding

in Kraft to states that do not use a combined water's edge or

domestic combination reporting method, but instead employ a single

entity method of reporting.  Dart Industries, Inc. v. Clark, 657

A.2d 1062, 1066 (R.I. 1995)(Supreme Court of Rhode Island held that

the state's single entity tax scheme was similar to statute

invalidated in Kraft); Conoco, Inc. and Intel Corp. v. Taxation and

Revenue Department, Nos. 22,995/23,045 (N.M. S. Ct. November 26,

1996)(New Mexico supreme court held that the state's single entity

reporting method was identical to the statute invalidated in

Kraft).

     In Kraft, the Supreme Court noted: "[I]n considering claims of

discriminatory taxation under the Commerce Clause *** it is

necessary to compare the taxpayers who are most similarly

situated." Kraft, 505 U.S. at 80 n.23 (Emphasis added.)  In

Thiokol, the Supreme Court of Kansas, relying upon footnote 23 in

Kraft, upheld a state corporate income tax scheme that used the

domestic combined method of apportioning income to the state. 

Under this method, each unitary business group member is taxed

based upon its apportioned share of the income from all members of

the unitary group doing business in the United States, regardless

of the country of origin. Thiokol, 864 P.2d at 1186.  Although this

method differs slightly from the water's edge method, both combined

reporting methods share one feature that the Thiokol court found

crucial to the constitutionality to the taxing scheme.  The

combined reporting methods, unlike the Iowa single entity model,

include income to the parent company combined from all domestic

subsidiaries, while excluding all income from foreign subsidiaries. 

Thiokol, 864 P.2d at 1186.  

     The Thiokol court reasoned that a combined reporting state

(i.e. water's edge), does not discriminate against foreign

subsidiaries.  While its dividend payments to the unitary business

are taxed, its total income is not included in the unitary business

overall income.  Conversely, while a domestic subsidiary's dividend

payments to the unitary business is not taxed, its total income is

included in the unitary business overall income.  Thus, no

discrimination against foreign commerce occurs.        

     Following the lead of the Kansas Supreme Court, the Supreme

Court of Maine in E.I. Du Pont de Nemours & Co. v. State Tax

Assessor, 675 A.2d 82 (1996), held that combined water's edge

reporting saved the Maine income tax statute from the fate of the

Iowa statute in Kraft.  As the Du Pont court noted, Iowa taxed

neither the income nor the dividends of a domestic subsidiary of an

Iowa taxpaying parent entity, if the subsidiary did not do business

within the state in Iowa.  Iowa did, however, tax dividends paid by

the foreign subsidiary to the domestic parent.  This scheme

facially discriminated against foreign commerce since the foreign

subsidiary of an Iowa parent company was always treated more

harshly than a domestic subsidiary of the same Iowa parent. 

DuPont, 675 A.2d at 84.

     Far from discriminating against foreign commerce, Illinois'

water's edge combined reporting method provides the same "taxing

symmetry" that the DuPont court relied upon in finding that the

Maine statute was constitutional.  DuPont, 675 A.2d at 88. 

Although the dividends paid to parent corporations by domestic

subsidiaries are not taxed, the apportioned income of the domestic

subsidiary is subject to tax.  Conversely, the use of the water's

edge combined reporting method limits the state to the nation's

boundaries in calculating corporate income, and, although the

dividend paid to the parent corporation by a foreign subsidiary is

included in the combined domestic income,  no income from the

foreign subsidiary is included in the combined domestic income,

hence no foreign subsidiary income is apportioned to Illinois. 

DuPont, 675 A.2d at 89.    

     We find the rationale of the Thiokol and DuPont courts to be

persuasive, and hold that the Illinois water's edge method of

apportionment of income to companies doing business in Illinois

does not facially discriminate against foreign commerce.  We affirm

the trial court on that basis.

     CFSC maintains that the rationale expressed in Thiokol and

DuPont are not applicable to the situation at bar, as those cases

concerned the tax treatment of dividends paid by foreign

subsidiaries, while the case at bar concerns royalty and interest

payments.  We disagree.  Royalties and interest payments are

expenses used to generate income, which are usually offset against

income of the payor.  See, NCR Corp v. Comptroller of the Treasury,

313 Md. 544, 544 A.2d 764 (Md. 1988).  Since, under the water's

edge combined reporting method, none of the foreign subsidiary's

income is apportioned to Illinois, we can see no reason why these

expenses used to generate that income should be apportioned to

Illinois.

     We also agree with the rationale of the Minnesota Tax Court,

which rejected this same argument in Caterpillar, Inc. v.

Commissioner of Revenue, No. 6633 (November 14, 1996).  In that

case, the court specifically held that water's edge reporting does

not unconstitutionally discriminate against royalties and interest

payments received by Caterpillar's domestic entities from its

foreign subsidiaries.  We agree with the tax court's conclusion

that, under the water's edge method of combined reporting, royalty

and interest paying foreign subsidiaries are similar to non-related

domestic third party customers of Caterpillar, in that none of the

income of the foreign subsidiary or the non-related third party is

included in the income allocable to Illinois.  Thus, the foreign

subsidiaries are similarly to domestic entities, and no

discrimination results.          

     For the foregoing reasons, the judgment of the Circuit Court

of Peoria County is affirmed.

     Affirmed.  

     LYTTON, P.J., concurs

     BRESLIN, J., Specially concurs

     JUSTICE BRESLIN, specially concurring:

     Although I agree with the majority's analysis of CFSC's

constitutional argument, I write separately because I believe the

trial court lacked jurisdiction to consider this argument in the

first instance.

     CFSC cited cases in its brief, which the majority relied

upon, to support its argument that it may challenge any tax it

chooses so long as it has paid a single tax under protest.  But

in each of the cited cases the taxpayers confined their arguments

to issues related to the particular tax which had been paid under

protest.  CFSC has not cited any case, and my research has

revealed no case, that holds that the payment of a tax under

protest entitles the taxpayer to challenge a different tax that

was not paid under protest.  Accordingly, the cases cited by CFSC

are not persuasive.

     I would analyze this issue by applying the plain language of

Section 2a of the State Officers and Employees Money Disposition

Act (Protest Monies Act), 30 ILCS 230/2a (West 1994).  According

to that statute, "[t]he judicial remedy herein provided ***

relates only to questions which must be decided by the court in

determining the proper disposition of the moneys paid under

protest." 30 ILCS 230/2a (West 1994).

     The only taxes paid under protest by CFSC were those

associated with the Department's disallowance of the deduction of

Subpart F income and the disallowance of the net operating loss

claim.  However, the Department returned the portion of the

protest fund attributable to its disallowance of the Subpart F

deduction.  Accordingly, the disposition of the remainder of the

protest fund depended solely upon the propriety of the

Department's decision to disallow CFSC's net operating loss

claim.  In order to determine whether that decision was proper,

the trial court was not required to consider the

constitutionality of the Department's treatment of the royalties

and interest payments.  Thus, in my opinion, the plain language

of section 2a of the Protest Monies Act precluded CFSC from

challenging the Department's treatment of the royalty and

interest payments.

     Furthermore, even if the trial court found that the

Department's treatment of the royalties and interest payments was

unconstitutional, CFSC would not have been entitled to a refund

from the protest fund because that fund held only the taxes

associated with the net operating loss claim.  As a result, any

ruling made by the trial court or this court regarding the

constitutionality of the Department's treatment of the royalties

and interest payments would be advisory in nature.  Illinois

courts lack jurisdiction to render advisory opinions. See Ill.

Const. 1970, art. VI, §9 (circuit courts have jurisdiction over

justiciable matters); People ex rel. Black v. Dukes, 96 Ill. 2d

273, 276-77, 449 N.E.2d 856, 857-58 (1983) (cases that result in

advisory opinions are not justiciable).  Therefore, in my

opinion, this appeal should have been dismissed for lack of

jurisdiction.

     Moreover, in adopting the Protest Monies Act, the

legislature intended to limit a taxpayer's ability to challenge a

tax in order to prevent the disruption of the State treasury. See

Yellow Freight System, Inc. v. Illinois Commerce Commission, 70

Ill. App. 3d 95, 101, 388 N.E.2d 235, 240 (1979).  However, under

the majority's expansive reading of the Act, a taxpayer such as

CFSC will be able to challenge virtually every tax it is required

to pay as long as it pays a single tax under protest.  This

reading of the Protest Monies Act contravenes the legislature's

intent to limit tax challenges to the issues which must be

decided to determine the proper disposition of the particular tax

monies which were paid under protest.  Accordingly, I would hold

that under section 2a of the Protest Monies Act, a taxpayer may

challenge only the tax that was paid under protest.