YELLOW FREIGHT SYSTEM, INC., *et al.*, Plaintiffs-Appellees, *v.* ILLINOIS COMMERCE COMMISSION *et al.*, Defendants-Appellants.

Fourth District    No. 15322

Opinion filed April 4, 1979.

William J. Scott, Attorney General, of Chicago (Hercules F. Bolos, Special Assistant Attorney General, and Thomas J. Swabowski and Thomas J. Russell, Assistant Attorneys General, of counsel), for appellants.

Eric Robertson, of Leuders, Robertson & Konzen, of Granite City, and Edward D. McNamara, of Springfield, for appellees.

Mr. JUSTICE MILLS delivered the opinion of the court:
Truck franchise fees.
Paid under protest to comply with statute?
No.
We reverse.

Here are the facts. Yellow Freight System (Yellow) and Kroblin Refrigerated Xpress (Kroblin) mailed checks to the Illinois Commerce Commission (Commission) for payment of certain franchise fees which were due under section 18—801 of the Illinois Motor Vehicle Code (Ill. Rev. Stat. 1977, ch. 95½, par. 18—801) and Illinois Commerce Commission General Order Number 1, as amended. Each of these payments purported to be protested.

Along with its check for the tax due, Kroblin sent a letter dated November 29, 1978, which stated that the protest was being made under a case before the United States District Court for the Eastern District of Illinois. However, the action cited by Kroblin had been dismissed by the Federal court over a year earlier, on October 31, 1977.

A check in the amount of $38,900 was sent to the Commission by Yellow with the words "paid under protest" typed on the face. This check was accompanied by Yellow's fee application. Typed on the fee application were the words "ordered and paid for under protest" and "advance decals 155" which were highlighted by a yellow ink marker. Both the check and the fee application were dated November 29, 1978.

On December 22, 1978, 24 days after the tax payment, both Yellow and Kroblin sent letters to the Commission which were captioned "Amended notice of protest." Yellow's letter advised the Commission that $33,550 of the total $38,900 was protested under the case of Yellow Freight System, Inc., and Kroblin Refrigerated Xpress, Inc. v. Illinois Commerce Commission, which was filed in Sangamon County. Kroblin's letter also referred to the "Sagamon [sic]" County case.

On December 27, 1978, Yellow and Kroblin filed a complaint against the Commission seeking a determination of the constitutionality of the franchise fees and praying for injunctive relief. The plaintiffs also filed a verified petition requesting the circuit court of Sangamon County to issue a temporary injunction to restrain the transfer of the protested payments from the protest fund into the motor vehicle fund.

During the hearing on the petition for the temporary injunction certain stipulations were entered by the parties. These stipulations stated, *inter alia*, that the Commission "noted" that the payments were protested. It was further stipulated that the Commission (upon the Attorney General's advice) had paid the fees to the State Treasurer, who had then deposited them in the motor vehicle fund.

The Commission filed an affidavit of George R. Taylor, Comptroller of the Illinois Commerce Commission, which stated that no notice of payment under protest in substantially the form required by the Illinois statutes had been received by his office in connection with franchise fees collected for the current year. Mr. Taylor, who received the alleged protest payments, had participated as an affiant in litigation in Madison

County where the legality and constitutionality of these same franchise fees were in issue. The parties in the Madison County case are also the parties in the present case and it was stipulated that the Attorney General knew of the existence of the Madison County litigation on November 29, 1978. The Madison County circuit court had dismissed that suit against the Commission on December 1, 1978, and on December 26, 1978, the plaintiffs filed a motion for rehearing.

After arguments, the Sangamon County circuit court, on December 27, 1978, issued a temporary injunction restraining the transfer of plaintiffs' payments and the Commission filed this appeal. The Commission argues that the payments were not properly protested and that it was an abuse of the court's discretion to grant such relief where the plaintiffs failed to properly protest their payments.

We agree with the Commission.

■■ When a statute provides a procedure to be used for the recovery of taxes, the taxpayer must comply with the statutory provisions to enable a court to order a refund. (*People ex rel. Voorhees v. Chicago, Burlington & Quincy R.R. Co.* (1944), 386 Ill. 200, 53 N.E.2d 963.) Statutory compliance is a prerequisite to a taxpayer's right to defend against a particular tax levy and the burden of showing this compliance rests on the objecting taxpayer. *People ex rel. DeRosa v. Chicago & North Western Ry. Co.* (1945), 391 Ill. 347, 63 N.E.2d 401.

Here, Yellow and Kroblin purported to make payment of franchise fees under protest pursuant to "An Act in relation to the payment and disposition of moneys received by officers and employees of the State of Illinois by virtue of their office or employment" (Act). Section 2a provides, in relevant part:

> "Every officer, board, commission, commissioner, department, institute, arm or agency to whom this Act applies is to notify the State Treasurer as to money paid to it under protest as provided in Section 2a.1 and the Treasurer is to place such money in a special fund to be known as the protest fund. At the expiration of 30 days from the date of payment the money is to be transferred from the protest fund to the appropriate fund in which it would have been placed had there been payment without protest unless the party making that payment under protest has filed a complaint and secured within that 30 days a temporary injunction, restraining the making of that transfer * * *.
> ❋ ❋ ❋
> No payment under protest within the meaning of this Act has been made unless paid to an officer * * * and unless made in the form specified by Section 2a.1.* * *." Ill. Rev. Stat. 1977, ch. 127, par. 172.

Section 2a.1 (paragraph 172a) provides:

"Payment of money under protest to every officer, board, commission, commissioner, department, institute, arm or agency authorized to receive moneys for or on behalf of the State shall be noted by the payer as paid under protest as to each payment so made. In cases where a single remittance is made of an amount of money in excess of that so paid under protest, the particular amount paid under protest together with pertinent data descriptive of the suit or suits in relation to which such payment or payments are made and the amount allocable to each, shall be stated.

Notice of payment under protest shall be made in substantially the following form:

(Date) _____

To: (Officer, board, etc., to whom payment is made).

You will please take notice that $_____ of the attached or enclosed remittance in the amount of $_____ for (Motor Fuel Tax, Retailers' Occupation Tax, Franchise Tax, etc., as the case may be) is made under protest.

The undersigned is an original (or intervening) party plaintiff in the following case or cases in relation to which the aforesaid payment is made under protest.

(Here list title of case or cases, the court in which pending, and the general court number assigned to each. If more than one suit is pending, the specific amount paid under protest as to each case shall be stated by the person making payment under protest.)

_____
(Name of person making
payment under protest.)


_____
(Address)


By_____
(Authorized officer or agent.)"

Section 2a also provides that payment may not be made into court or to a circuit clerk for a proper protest and that notice must be given as to each payment so made. Thus, the taxpayer must first show that he has complied with section 2a.1 of the Act before a court may issue a temporary injunction restraining payment out of the protest fund.

The cardinal controversy in the present case revolves around the issue of whether plaintiffs' protests were "substantially" in the form provided for in the Act.

■■ The parties do not dispute that the amended notice contained the information required by section 2a.1. However, we find no authority to allow such amendment and it is clear that the Act contemplates the notice of protest accompanying the payment. Any other construction would prevent efficient and timely distribution of payments. In addition, section 2 of the Act requires officers receiving payments to pay them into the State treasury within 48 hours of receipt unless required to be held in a separate fund by some other statute. The officer must be able to ascertain that the payment is required to be placed in the protest fund at the time he receives it so that he may comply with section 2. Thus, the amended notices sent by plaintiffs 24 days after payment were untimely and ineffective as a basis for arguing that compliance was accomplished.

While no case was discovered which discusses what is required for substantial compliance with section 2a.1, the Illinois Supreme Court has previously interpreted identical language appearing in the section which allows protest of real estate taxes. (Ill. Rev. Stat. 1977, ch. 120, par. 675.) That section states that when a person desires to object to all or any part of a real property tax, he is to pay the installment accompanied by a writing "* * * substantially in the following form:

> Payment under protest.
>
> Vol. No. _____ Item No. _____ (as the same appear on the General Tax Bill). Original amount of tax $_____. Amount of payment $_____. This payment shall be applied to the taxes of all taxing bodies ratably, subject to refund of _____% of the tax, which is objected to on the ground (here set forth ground of objection) and is, accordingly, made under protest.
>
> Name of taxpayer _____
> Address _____ "

In *People ex rel. Darr v. Alton R.R. Co.* (1942), 380 Ill. 380, 43 N.E.2d 964, the notice failed to contain the volume and item numbers as they appeared on the general tax bill and also failed to give a description of the property. However, additional or substitute information was given which enabled the county collector to perform his duties. In interpreting the words "in substantially the following form," the court stated, as used in the section, they must

> "* * * be given a meaning as evidencing an intent to permit a taxpayer to protest by giving notice in a form slightly variant from that prescribed. It means that the notice should, in the main, contain all the essential requirements of the form prescribed but that something less than exact compliance in every detail will be sufficient." 380 Ill. 380, 384, 43 N.E.2d 964, 966.

The real estate tax protest statute was again discussed in *People ex rel. Wisdom v. Chicago, Burlington & Quincy R.R. Co.* (1965), 32 Ill. 2d 434, 206 N.E.2d 702. There, the taxes were paid in two installments. The

first installment was accompanied by a notice of protest; however, there was no showing that a notice was also given as to the second installment. Although the notice was not in strict compliance with the statutory form, the court found it sufficient, since routine computation would allow the collector to determine the amounts required to be stated by the statute, and the collector did, in fact, withhold the correct amount. As to the issue that no showing of a notice of protest with the second installment was introduced, the court said that since the county collector's official receipt and tax record both showed it as protested, a *prima facie* case had been made by the objector. No evidence to the contrary had been offered.

The elements of a section 2a.1 notice are: (1) the direction of the protest form to the collecting officer; (2) a statement regarding the amount protested; (3) a reference to the tax protested; (4) a list of the case or cases pending where protestant is challenging the tax, including the court and court number assigned along with a list of amount protested in each case; and (5) the name and address of the protestant along with an authorized signature.

■ It is important to note that section 2a gives the protesting party 30 days from the date of protest within which to file a complaint and secure a temporary injunction, while section 2a.1 requires the protestant to list the pending case in the notice. Thus, it would seem to be sufficient if the taxpayer indicated in his notice that an action to challenge the validity of the tax would be filed in a designated court within 30 days. However, Kroblin cited to a Federal case which had been *dismissed more than 12 months prior* to this payment. The Commission would not have been justified in having this payment placed in the protest fund on the basis of a case long since disposed of by the Federal court. Certainly, there was nothing to indicate that this was anything more than the action of a disgruntled taxpayer, unhappy with the result obtained in prior litigation.

Kroblin argues that even though the citation to the Federal case was erroneous, it gave sufficient notice of protest because the comptroller knew of the Madison County case. Even assuming, *arguendo*, the truth of that contention, the response is that the statute provides for *formal*—not actual—notice of protest. If the legislature had intended to allow protest where actual or constructive notice was present, it could easily have done so. Such a scheme would, however, invite endless litigation and prevent the prompt and efficient distribution of payments provided for in the Act.

Yellow's protest was an even greater deviation from the statutory form. Neither its check nor its fee application make reference to a pending case. The fee application indicates that the entire $38,900 is attempted to be protested while the court below found that $33,550 was protested. The Commission could not have determined that this amount was

protested on the basis of the information provided by Yellow. These variances from the statutory form are more than the slight ones envisioned by *Darr* and *Wisdom*.

The notice must be sufficient to enable the comptroller to perform the duties assigned to him. Where essential information is not provided and the comptroller is unable to determine the amount protested, or that the protest is more than that of a disgruntled taxpayer, his duty is to pay the funds to the State Treasurer rather than to have them placed in the protest fund. Here, the notice failed to furnish the Commission with the information required. The provisions of section 2a.1 indicate a legislative intent to preclude objection to a tax where the taxpayer has failed to pay under protest. The obvious intent is to provide for an orderly procedure for tax collection and reduce the possibility of disruption of the State treasury. Since Yellow and Kroblin failed to meet the statutory prerequisite, they were not entitled to the temporary injunction issued by the circuit court.

Reversed.

REARDON, P. J., and CRAVEN, J., concur.