CATERPILLAR FINANCIAL SERVICES CORPORATION, Plaintiff-Appellant, v. DOUGLAS WHITLEY, as Director, Department of Revenue, *et al.*, Defendants-Appellees.

Third District    No. 3—94—0830

Opinion filed May 19, 1997.

BRESLIN, J., specially concurring.

Richard A. Hanson, of McDermott, Will & Emery, of Chicago, Daniel J. Schlicksup, of Peoria, and Jerome B. Libin (argued) and William H. Morris, both of Sutherland, Asbill & Brennan, of Washington, D.C., for appellant.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solic-

itor General, and Deborah L. Ahlstrand (argued), Assistant Attorney General, of counsel), for appellees.

JUSTICE HOLDRIDGE delivered the opinion of the court:

Benjamin Franklin is credited with the saying that in this world nothing is certain but death and taxes. However, we are convinced that he never had to consider the following: are royalties and interest paid to a domestic parent company by a foreign subsidiary under the domestic "water's-edge" combined reporting method of apportioning income to be treated the same as dividends paid between similar entities under the "single-entity" apportionment method. We have.

After a careful review of the record and the relevant case law, and considering Dr. Franklin's advice that "haste makes waste," we find that the Illinois "water's edge" apportionment method does not unconstitutionally discriminate against interest and royalty payments from foreign subsidiaries of domestic parent corporations doing business in Illinois, and we affirm the holding of the trial court.

The plaintiff, Caterpillar Financial Services Corporation (CFSC), a wholly owned domestic subsidiary of Caterpillar, Inc., brought this action in the circuit court of Peoria County against the Department of Revenue, Douglas Whitley, Director of Revenue, and Patrick Quinn, Treasurer of the State of Illinois (collectively referred to as the Department) pursuant to the State Officers and Employees Money Disposition Act (30 ILCS Ann. 230/1 *et seq.* (Michie 1994) (Protest Monies Act)). CFSC sought a refund of Illinois income tax paid under protest to the Department of Revenue for tax year 1987.

The circuit court entered judgment for CFSC as to a portion of the protested money and entered judgment in favor of the Department on the remainder of the fund. CFSC appealed, and the Department chose not to appeal that portion of the judgment in favor of CFSC. The Department maintains, however, that CFSC's appeal should be dismissed as an impermissible request for an advisory opinion. For the reasons discussed below, we affirm the judgment of the trial court.

FACTUAL BACKGROUND

Caterpillar, Inc., and its 52 domestic and foreign subsidiaries operate as a unitary business group[1], engaged in the manufacture of engines and earth-moving equipment and related marketing,

---

[1] A "unitary business group" is defined by the Illinois Income Tax Act as:
"a group of persons related through common ownership whose business activities are integrated with, dependent upon and contribute to

financial and service functions. Of these entities, only Caterpillar, Inc., CFSC, and 13 other domestic subsidiaries engaged in business in Illinois and were thus required to file Illinois corporate income tax returns. No foreign subsidiary engaged in business in Illinois.

Caterpillar, Inc., licenses its trademarks and technology to foreign subsidiaries, granting those subsidiaries the right to build and market products identical to those designed and manufactured domestically. In the licensing agreements, the foreign subsidiaries are charged a license fee, or royalty, equal to 5% of the foreign subsidiaries' net sales. Caterpillar, Inc., also has licensing agreements with its domestic subsidiaries, however, these domestic subsidiaries are not charged a royalty. In addition, Caterpillar also enters into licensing agreements with unrelated third parties, foreign and domestic, which may or may not involve payment of a royalty to Caterpillar.

Caterpillar, Inc., and some domestic subsidiaries, including CFSC, loan money to foreign subsidiaries, from which interest payments are received. It is undisputed by the parties that the royalty and interest payments constitute "business income" as that term is defined by section 1501(1) of the Illinois Income Tax Act (Act) (35 ILCS Ann. 5/101 *et seq.* (Michie 1994)).

### ILLINOIS COMBINED WATER'S-EDGE METHOD

■ Because a state may not constitutionally tax income earned outside its borders, the income earned by each Illinois member of the Caterpillar unitary group must be apportioned between Illinois and other jurisdictions. *Container Corp. v. Franchise Tax Board*, 463 U.S. 159, 77 L. Ed. 2d 545, 103 S. Ct. 2933 (1983). Illinois, like many other states, has adopted the "combined water's-edge method" to determine the portion of unitary business income to attribute to income earned within its borders. 35 ILCS Ann. 5/304(a) (Michie 1994). Under this method of reporting and apportionment, the state does not look beyond the water's edge, *i.e.*, beyond the geographical boundaries of the

---

each other. The group will not include those members whose business activity outside the United States is 80% or more of any such member's total business activity ***." 35 ILCS Ann. 5/1501(a)(27) (Michie 1994).

By excluding members whose business activity outside the United States is 80% or more of that member's total business activity, Illinois has adopted the "water's-edge" method of apportionment of business income. States that combine the business activity of a unitary business group without regard to whether a member entity is foreign or domestic have adopted the "worldwide combined reporting" method.

United States, in determining what activities are appropriately considered part of a unitary business.

In general terms, the Illinois combined water's-edge method multiplies the combined net income of domestic unitary corporations by an apportionment percentage calculated using a three-factor formula. The factors include property, payroll and sales. The total for each factor for the corporation subject to Illinois tax is compared to the total for each factor for all domestic corporations in the unitary group and is expressed as a fraction, *i.e.*, the numerator of each factor is the amount of Illinois property, payroll or sales and the denominator of each factor is the amount of all the domestic unitary group's property, payroll or sales. The sales factor is then double-weighted. The percentages determined by dividing each numerator by its denominator are averaged and the combined net income of the domestic unitary group is multiplied by the average percentage figure to determine the amount of income allocated to Illinois.

Under the Illinois method of calculating "water's-edge" income, corporations that have 80% or more of their property and payroll in foreign countries are not included in the unitary business group. See 35 ILCS Ann. 5/1501(a)(27) (Michie 1994). As a result, neither the income nor the factors (property, payroll, sales) of the foreign businesses are included in the combined apportionment calculation.

### CATERPILLAR'S 1987 INCOME TAX RETURNS

This appeal concerns CFSC's liability for Illinois corporate income tax for 1987. Caterpillar, Inc., CFSC, and all the other domestic subsidiaries filed a consolidated federal income tax return for the calendar year 1987. Caterpillar, Inc., CFSC, and 13 of the domestic subsidiaries were engaged in business in Illinois. Each of these entities filed its own Illinois income tax return, reporting its share of $364,799,967, which was the combined income of the entire unitary business group. This figure was arrived at by making certain additions and subtractions to the combined federal taxable income of the *domestic* members of the unitary group. Royalties and interest payments received from Caterpillar's foreign subsidiaries were included in the Illinois base income. The Illinois reporting entities, including CFSC, deducted from their base income $27,812,481, which was an amount equal to the "subpart F" income[2] on the federal income tax return.

---

[2]Subpart F of the Internal Revenue Code of 1954 (Code) (26 U.S.C. §§ 951 through 964 (1982)) relates to undistributed income of controlled foreign corporations (CFC). To eliminate potential tax avoidance, the Code provides

In determining its Illinois apportionment factor for combined water's-edge reporting purposes, CFSC calculated the apportionment factor utilizing the statutory method. This process produced an Illinois apportionment factor for CFSC of .001479 or less than two-tenths of 1%. That portion of the 1987 base federal taxable income, excluding a claimed net operating loss deduction, was then attributed to Illinois by CFSC as its income subject to state taxation.

PROCEDURAL BACKGROUND

On January 29, 1990, the Department issued a notice to CFSC seeking additional taxes, penalties and interest for 1987. The Department notified CFSC that it had disallowed CFSC's deduction of subpart F income from its base taxable income. The notice made no mention of the net operating loss deduction also taken by CFSC.

As a result of this disallowance, the Department took the position that CFSC had incorrectly calculated its taxable income and thus owed additional tax. In response to the notice, CFSC paid, under protest, $21,371.30 ($11,092.04 in tax, $5,539.57 in penalties, and $4,739.69 in statutory interest).

On March 10, 1992, CFSC filed a three-count complaint under the Protest Monies Act. In count I, CFSC alleged that the Department's disallowance of CFSC's subtraction of subpart F income was in error, as subpart F income could be subtracted as a "dividend" pursuant to section 203(b)(2)(N) of the Act. 35 ILCS 5/101 *et seq.* (West 1994). In count II, CFSC alleged that the Department's disallowance of a subtraction from base income for subpart F income was a violation of the uniformity clause of the Illinois Constitution. Ill. Const. 1970, art. IX, § 2. In count III, CFSC alleged that the inclusion of "foreign source income" in base income grossly distorted the amount of CFSC's income upon which CFSC's Illinois tax liability was calculated. CFSC defined "foreign source income" as not only subpart F income, but also interest and royalties received from foreign subsidiaries. Also in count III, CFSC sought relief pursuant to section 304(f) of the Act (35 ILCS 5/304(f) (West 1994)), in the form of an order that the Department include foreign property, payroll and sales in the apportionment formula used to calculate CFSC's taxable income.

---

that a domestic company is taxed on certain income of CFC it controls, whether or not there is any actual distribution from the CFC to the domestic company. In the matter *sub judice,* the Department disallowed CFSC's attempt to deduct subpart F income as a "foreign dividend."

Effective for the tax year 1988, Illinois provided a statutory deduction for subpart F income.

On January 28, 1993, CFSC filed an amended complaint in which it added count IV, alleging that the Department's disallowance of CFSC's deduction of subpart F income as "dividends" violated the commerce clause of the United States Constitution. U.S. Const., art. I, § 8. CFSC cited *Kraft General Foods, Inc. v. Iowa Department of Revenue & Finance*, 505 U.S. 71, 120 L. Ed. 2d 59, 112 S. Ct. 2365 (1992).

On May 23, 1993, the Department filed a motion to dismiss all four counts of CFSC's complaint. In the motion to dismiss, the Department informed the court that in preparation for trial it had discovered that of the $11,092.04 in tax paid under protest, only $2,674 in tax assessed in the original notice was attributable to disallowance of the deduction for subpart F income. The remainder of the assessment was actually attributable to the disallowance of a net operating loss claim, although the Department acknowledged that the notice sent to CFSC failed to identify the denial of the net operating loss as part of the basis for that notice.

The Department declared that it was no longer interested in asserting the disallowance of the subpart F deduction, offered to immediately release all money in the protest fund attributable to the subpart F issue, and asked the circuit court to dismiss as moot CFSC's complaint as to the remaining money in the protest fund. The Department maintained that since the only issue CFSC protested had been resolved, the circuit court no longer had jurisdiction under the Protest Monies Act.

The circuit court denied the motion and the matter proceeded to trial. During trial, and in its post-trial brief, CFSC expanded the theory articulated in count IV of the amended complaint. CFSC argued that, in addition to the Department's treatment of subpart F income, its treatment of CFSC's receipt of interest and royalty payments also violated the commerce clause under *Kraft*.

The circuit court entered judgment on each count in the complaint. Judgment was granted in favor of CFSC on its treatment of subpart F income as a deductible dividend in computing Illinois base income and the court ordered the Department to refund to CFSC the taxes paid under protest with interest. The circuit court entered judgment for the Department on the question of including foreign royalties and interest in the base income upon which Illinois income tax was imposed, and on the question of whether the application of the water's-edge method discriminated against foreign commerce in violation of the foreign commerce clause. CFSC appealed the portion of the order in favor of the Department. The Department did not appeal the portion of the order in favor of CFSC.

The record indicates, and the parties agreed at oral argument

before this court, that after the entry of judgment in favor of CFSC on the subpart F issue, some monies remained in the protest fund; the exact amount, however, appears to be unknown or subject to dispute.

ANALYSIS

Appellate Jurisdiction

■ As a preliminary matter, we first address the Department's contention that this court lacks jurisdiction over CFSC's appeal. The Department claims that, under the Protest Monies Act, this court does not have jurisdiction over this matter since, under that act, judicial remedy is limited "to questions which must be decided by the court in determining the proper disposition of the moneys paid under protest." 30 ILCS Ann. 230/2a (Michie 1994). The Department maintains that, at the time the taxes were paid in protest, CFSC did not base its protest on a claim that it was improperly denied the opportunity to use royalties and interest payments from foreign subsidiaries in the factors used to calculate its Illinois apportionment formula.

The Department argues that any decision this court would issue on the question of the constitutionality of the treatment of foreign subsidiary royalties and interest payments would constitute an advisory opinion only and could not provide CFSC any relief. We disagree. Although the record is less than clear on whether any money remains in the protest fund following the circuit court's order granting CFSC judgment on the subpart F issue, the parties have represented to this court that after the refund some amount of money will remain in the protest fund.

We find, therefore, that funds still remain in the protest fund over which the circuit court retains jurisdiction and this court's ruling would affect those funds. Thus, our decision would affect an actual controversy and would not be an advisory opinion. *People ex rel. Partee v. Murphy*, 133 Ill. 2d 402, 407-08 (1990).

■ We also find no authority to support the Department's position that the Protest Monies Act limits CFSC to the theory of recovery articulated at the time it paid the taxes under protest, and nothing in the Protest Monies Act specifically precludes a taxpayer from bringing any affirmative issue before the court in an effort to recover funds that it has paid into the protest fund.

CFSC has cited a number of cases where a taxpayer changed its position or amended its complaint after paying into the protest fund. See *General Telephone Co. v. Johnson*, 103 Ill. 2d 363 (1984); *Chicago*

& *Illinois Midland Ry. Co. v. Department of Revenue*, 63 Ill. 2d 474 (1976). While none of these cases specifically so held, we find they support the general proposition that a taxpayer can pay under protest into the fund and subsequently raise any legitimate claim to establish its right to a refund. We hold, therefore, that we have jurisdiction over this appeal.

### CFSC's Constitutional Argument

Turning to the merits of CFSC's appeal, CFSC maintains that the Illinois combined water's-edge method of apportioning the combined income of a unitary business group for tax purposes systematically discriminates against foreign commerce as to royalties and interest paid by foreign subsidiaries to parent corporations with taxable income in Illinois, in violation of the foreign commerce clause of the United States Constitution. U.S. Const., art. I, § 8.

In particular, CFSC maintains that the inclusion of interest and royalties from foreign subsidiaries in the combined net income base without the inclusion of foreign subsidiaries' property, payroll and sales factors in the apportionment formula violates the foreign commerce clause. In support of its position CFSC relies entirely upon principles articulated by the United States Supreme Court in *Kraft*.

In *Kraft*, Iowa allowed a deduction from base taxable income for dividends paid to a parent company by a *domestic* subsidiary not doing business in Iowa, while it did not allow a deduction from base income for dividends paid to a parent company by a *foreign* subsidiary not doing business in Iowa. The Supreme Court held that the fact that dividends received from a unitary business' foreign subsidiaries were always treated less favorably than dividends received from its domestic subsidiaries constituted an unconstitutional discrimination under the foreign commerce clause.

CFSC maintains that the rationale of *Kraft* should apply to the Illinois taxation of royalties and interest payments received from foreign subsidiaries. CFSC concludes that because the foreign subsidiaries' factors (*i.e.*, property, payroll and sales) are not included in the apportionment fraction denominators, a larger portion of the foreign payments to the unitary group is included in Illinois allocable income, thus discriminating against foreign commerce.

■ Since *Kraft* was issued, several other courts have been asked to determine whether a given state's tax system discriminates against foreign commerce in a manner prohibited by *Kraft*. Beginning with *In re Morton Thiokol, Inc.*, 254 Kan. 23, 864 P.2d 1175 (1993), upon which the circuit court relied in the instant matter to find no constitutional violation, courts have limited the holding in *Kraft* to

states that do not use a combined water's-edge or domestic combination reporting method, but instead employ a single-entity method of reporting.[3] *Dart Industries, Inc. v. Clark*, 657 A.2d 1062, 1066 (R.I. 1995) (Supreme Court of Rhode Island held that the state's single-entity tax scheme was similar to statute invalidated in *Kraft*); *Conoco, Inc. v. Taxation & Revenue Department*, Nos. 22,995/23,045 (N.M. S. Ct. November 26, 1996) (New Mexico Supreme Court held that the state's single-entity reporting method was identical to the statute invalidated in *Kraft*).

In *Kraft*, the Supreme Court noted: "In considering claims of discriminatory taxation under the Commerce Clause *** it is necessary to compare the taxpayers who are '*most similarly situated.*' " (Emphasis added.) *Kraft*, 505 U.S. at 80 n.23, 120 L. Ed. 2d at 68 n.23, 112 S. Ct. at 2371 n.23. In *Thiokol*, the Supreme Court of Kansas, relying upon footnote 23 in *Kraft*, upheld a state corporate income tax scheme that used the domestic combined method of apportioning income to the state. Under this method, each unitary business group member is taxed based upon its apportioned share of the income from all members of the unitary group doing business in the United States, regardless of the country of origin. *Thiokol*, 254 Kan. at 37, 864 P.2d at 1186. Although this method differs slightly from the water's-edge method, both combined reporting methods share one feature that the *Thiokol* court found crucial to the constitutionality of the taxing scheme. The combined reporting methods, unlike the Iowa single-entity model, include income to the parent company combined from all domestic subsidiaries, while excluding all income from foreign subsidiaries. *Thiokol*, 254 Kan. at 37-38, 864 P.2d at 1186.

The *Thiokol* court reasoned that a combined reporting state (*i.e.*, water's edge) does not discriminate against foreign subsidiaries. While its dividend payments to the unitary business are taxed, its total income is not included in the unitary business's overall income. Conversely, while a domestic subsidiary's dividend payments to the unitary business are not taxed, its total income is included in the unitary business's overall income. Thus, no discrimination against foreign commerce occurs.

---

[3]As the term "single entity" implies, states using that method of reporting income treat the various subsidiaries of a multijurisdictional enterprise as separate from one another and the income of those entities not doing business in the state are not considered in the income of the single entity. J. Hellerstein & W. Hellerstein, State and Local Taxation 432 (4th ed. 1978).

Following the lead of the Kansas Supreme Court, the Supreme Court of Maine in *E.I. Du Pont de Nemours & Co. v. State Tax Assessor*, 675 A.2d 82 (Me. 1996), held that combined water's-edge reporting saved the Maine income tax statute from the fate of the Iowa statute in *Kraft*. As the *Du Pont* court noted, Iowa taxed *neither* the income *nor* the dividends of a domestic subsidiary of an Iowa taxpaying parent entity, if the subsidiary did not do business within the state in Iowa. Iowa did, however, tax dividends paid by the foreign subsidiary to the domestic parent. This scheme facially discriminated against foreign commerce since the foreign subsidiary of an Iowa parent company was always treated more harshly than a domestic subsidiary of the same Iowa parent. *Du Pont*, 675 A.2d at 84.

Far from discriminating against foreign commerce, Illinois' water's-edge combined reporting method provides the same "taxing symmetry" that the *Du Pont* court relied upon in finding that the Maine statute was constitutional. *Du Pont*, 675 A.2d at 88. Although the dividends paid to parent corporations by domestic subsidiaries are not taxed, the apportioned income of the domestic subsidiary is subject to tax. Conversely, the use of the water's-edge combined reporting method limits the state to the nation's boundaries in calculating corporate income, and, although the dividend paid to the parent corporation by a foreign subsidiary is included in the combined domestic income, *no income from the foreign subsidiary is included in the combined domestic income*, hence no foreign subsidiary income is apportioned to Illinois. *Du Pont*, 675 A.2d at 89.

We find the rationale of the *Thiokol* and *Du Pont* courts to be persuasive and hold that the Illinois water's-edge method of apportionment of income to companies doing business in Illinois does not facially discriminate against foreign commerce. We affirm the trial court on that basis.

CFSC maintains that the rationale expressed in *Thiokol* and *Du Pont* is not applicable to the situation at bar, as those cases concerned the tax treatment of dividends paid by foreign subsidiaries, while the case at bar concerns royalty and interest payments. We disagree. Royalties and interest payments are expenses used to generate income, which are usually offset against income of the payor. See *NCR Corp v. Comptroller of the Treasury*, 313 Md. 118, 544 A.2d 764 (1988). Since, under the water's-edge combined reporting method, none of the foreign subsidiary's *income* is apportioned to Illinois, we can see no reason why these expenses used to generate that income should be apportioned to Illinois.

We also agree with the rationale of the Minnesota tax court, which rejected this same argument in *Caterpillar, Inc. v. Commis-*

*sioner of Revenue*, No. 6633 (November 14, 1996). In that case, the court specifically held that water's-edge reporting does not unconstitutionally discriminate against royalties and interest payments received by Caterpillar's domestic entities from its foreign subsidiaries. We agree with the tax court's conclusion that, under the water's-edge method of combined reporting, royalty- and interest-paying foreign subsidiaries are similar to nonrelated domestic third-party customers of Caterpillar, in that none of the income of the foreign subsidiary or the nonrelated third party is included in the income allocable to Illinois. Thus, the foreign subsidiaries are similar to domestic entities, and no discrimination results.

For the foregoing reasons, the judgment of the circuit court of Peoria County is affirmed.

Affirmed.

LYTTON, P.J., concurs.

JUSTICE BRESLIN, specially concurring:
Although I agree with the majority's analysis of CFSC's constitutional argument, I write separately because I believe the trial court lacked jurisdiction to consider this argument in the first instance.

CFSC cited cases in its brief, which the majority relied upon, to support its argument that it may challenge any tax it chooses so long as it has paid a single tax under protest. But in each of the cited cases the taxpayers confined their arguments to issues related to the particular tax that had been paid under protest. CFSC has not cited any case, and my research has revealed no case, that holds that the payment of a tax under protest entitles the taxpayer to challenge a different tax that was not paid under protest. Accordingly, the cases cited by CFSC are not persuasive.

I would analyze this issue by applying the plain language of section 2a of the State Officers and Employees Money Disposition Act (Protest Monies Act) (30 ILCS 230/2a (West 1994)). According to that statute, "[t]he judicial remedy herein provided *** relates only to questions which must be decided by the court in determining the proper disposition of the moneys paid under protest." 30 ILCS 230/2a (West 1994).

The only taxes paid under protest by CFSC were those associated with the Department's disallowance of the deduction of subpart F income and the disallowance of the net operating loss claim. However, the Department returned the portion of the protest fund attributable to its disallowance of the subpart F deduction. Accordingly, the dispo-

sition of the remainder of the protest fund depended solely upon the propriety of the Department's decision to disallow CFSC's net operating loss claim. In order to determine whether that decision was proper, the trial court was not required to consider the constitutionality of the Department's treatment of the royalties and interest payments. Thus, in my opinion, the plain language of section 2a of the Protest Monies Act precluded CFSC from challenging the Department's treatment of the royalty and interest payments.

Furthermore, even if the trial court found that the Department's treatment of the royalties and interest payments was unconstitutional, CFSC would not have been entitled to a refund from the protest fund because that fund held only the taxes associated with the net operating loss claim. As a result, any ruling made by the trial court or this court regarding the constitutionality of the Department's treatment of the royalties and interest payments would be advisory in nature. Illinois courts lack jurisdiction to render advisory opinions. See Ill. Const. 1970, art. VI, § 9 (circuit courts have jurisdiction over justiciable matters); *People ex rel. Black v. Dukes,* 96 Ill. 2d 273, 276-77, 449 N.E.2d 856, 857-58 (1983) (cases that result in advisory opinions are not justiciable). Therefore, in my opinion, this appeal should have been dismissed for lack of jurisdiction.

Moreover, in adopting the Protest Monies Act, the legislature intended to limit a taxpayer's ability to challenge a tax in order to prevent the disruption of the state treasury. See *Yellow Freight System, Inc. v. Illinois Commerce Comm'n,* 70 Ill. App. 3d 95, 101, 388 N.E.2d 235, 240 (1979). However, under the majority's expansive reading of the Act, a taxpayer such as CFSC will be able to challenge virtually every tax it is required to pay as long as it pays a single tax under protest. This reading of the Protest Monies Act contravenes the legislature's intent to limit tax challenges to the issues that must be decided to determine the proper disposition of the particular tax monies that were paid under protest. Accordingly, I would hold that, under section 2a of the Protest Monies Act, a taxpayer may challenge only the tax that was paid under protest.