[This opinion has been published in *Ohio Official Reports* at 90 Ohio St.3d 157.]

EMERSON ELECTRIC COMPANY AND SUBSIDIARIES, APPELLANT, v. TRACY, TAX COMMR., APPELLEE.

[Cite as *Emerson Elec. Co. v. Tracy*, 2000-Ohio-174.]

*Taxation—Franchise tax—R.C. 5733.04(I)(2)(c) violates the Foreign Commerce Clause of the United States Constitution.*

R.C. 5733.04(I)(2)(c)'s deduction limitation for foreign source dividends unconstitutionally discriminates against foreign commerce in violation of the United States Constitution's Foreign Commerce Clause.

(No. 99-1879—Submitted June 7, 2000—Decided October 4, 2000.)

APPEAL from the Board of Tax Appeals, No. 97-S-1288.

_____

{¶ 1} Appellant, Emerson Electric Company, is a diversified multinational corporation that owns several domestic and foreign subsidiaries. During the 1992 and 1993 tax years, appellant received both foreign and domestic dividends from these subsidiaries. In preparing its Ohio franchise tax reports for these years, appellant deducted from its franchise tax income base one hundred percent of the dividends derived from its domestic subsidiaries. However, pursuant to R.C. 5733.04(I)(2)(c), which requires that taxpayers reduce deductions for foreign source dividends by fifteen percent, appellant deducted only eighty-five percent of its foreign dividends.

{¶ 2} Appellant later filed amended tax returns for 1992 and 1993, claiming that it was entitled to deduct one hundred percent of its foreign source dividends. Appellant contended that R.C. 5733.04(I)(2)(c)'s requirement that deductions for foreign source dividends be reduced by fifteen percent violates the Foreign Commerce Clause. Accordingly, in its amended returns, appellant deducted one hundred percent of the amount of dividends received from its foreign subsidiaries

and sought refund of the tax paid on the fifteen percent disallowed under the Revised Code.

{¶ 3} Appellee, the Tax Commissioner of Ohio, denied appellant's refund request. The commissioner concluded that the case law relied upon by appellant was not controlling and that, in any event, the commissioner is without jurisdiction to decide constitutional questions. Appellant appealed the commissioner's decision to the Board of Tax Appeals ("BTA"). The BTA upheld the commissioner's decision, concluding that neither the BTA nor the commissioner is empowered to decide constitutional questions.

{¶ 4} The matter is now before us upon an appeal as of right.

_____

*Squire*, *Sanders & Dempsey, L.L.P.*, *Bebe A. Fairchild*, *Terrence G. Perris*, *Abby R. Levine* and *David J. Young*, for appellant.

*Betty D. Montgomery*, Attorney General, and *Richard C. Farrin*, Assistant Attorney General, for appellee.

_____

**FRANCIS E. SWEENEY, SR., J.**

{¶ 5} The issue in this case is whether R.C. 5733.04(I)(2)(c) violates the Foreign Commerce Clause. We answer this question in the affirmative, finding that R.C. 5733.04(I)(2)(c), which treats dividends from foreign subsidiaries less favorably than those from domestic subsidiaries, unconstitutionally discriminates against foreign commerce. Accordingly, we reverse the decision of the BTA.

{¶ 6} Ohio levies corporate franchise taxes on a net income basis. R.C. 5733.051. "Net income" is defined as "the taxpayer's taxable income before operating loss deduction and special deductions." R.C. 5733.04(I). Ohio adjusts net income by allowing taxpayers to deduct net dividends received from domestic and foreign subsidiaries. R.C. 5733.04(I)(2) and (4). The Revised Code further provides:

"For purposes of determining net foreign source income deductible under division (I)(2) * * *, the amount of gross income from all such sources * * * shall be reduced by:

" * * *

"Fifteen per cent of the amount of dividends." R.C. 5733.04(I)(2)(c).

{¶ 7} In contrast, dividends derived from domestic subsidiaries can be deducted in their entirety. R.C. 5733.04(I)(4), incorporating Section 243, Title 26, U.S.Code. Appellant contends that this disparate treatment of domestic and foreign dividends is unconstitutional under the Foreign Commerce Clause.

{¶ 8} The United States Constitution's Foreign Commerce Clause provides that "Congress shall have Power * * * to regulate Commerce with foreign Nations." Clause 3, Section 8, Article I, United States Constitution. The term "commerce" includes the flow of dividends from a foreign subsidiary to its parent company. *Kraft Gen. Foods*, *Inc. v. Iowa Dept. of Revenue & Finance* (1992), 505 U.S. 71, 76, 112 S.Ct. 2365, 2369, 120 L.Ed.2d 59, 66.

{¶ 9} The Foreign Commerce Clause not only grants Congress the authority to regulate commerce between the United States and foreign nations, it also directly limits the power of the states to discriminate against foreign commerce. *Wardair Canada*, *Inc. v. Florida Dept. of Revenue* (1986), 477 U.S. 1, 7-8, 106 S.Ct. 2369, 2372-2373, 91 L.Ed.2d 1, 9. This is commonly referred to as the "dormant" or "negative" aspect of the Foreign Commerce Clause. The dormant aspect of the Foreign Commerce Clause serves two related purposes. First, it prevents states from promulgating protectionist policies. Second, it restrains the states from excessive interference in foreign affairs, which are the domain of the federal government. *Japan Line*, *Ltd. v. Los Angeles Cty.* (1979), 441 U.S. 434, 448-451, 99 S.Ct. 1813, 1821-1823, 60 L.Ed.2d 336, 347-348; *Natl. Foreign Trade Council v. Natsios* (C.A.1, 1999), 181 F.3d 38, 66. Because matters of concern to the entire nation are implicated, "the constitutional prohibition against state taxation of

foreign commerce is broader than the protection afforded to interstate commerce." *Kraft*, 505 U.S. at 79, 112 S.Ct. at 2370, 120 L.Ed.2d at 67-68. Where, as here, a statute facially discriminates against foreign commerce, it is virtually *per se* invalid. *Oregon Waste Sys.*, *Inc. v. Oregon Dept. of Environmental Quality* (1994), 511 U.S. 93, 99, 114 S.Ct. 1345, 1350, 128 L.Ed.2d 13, 21.

{¶ 10} The United States Supreme Court applied these principles in *Kraft*, *supra*, a case with facts closely paralleling those presented in the case at bar. *Kraft* involved a challenge to an Iowa statute that allowed corporate taxpayers to deduct dividends received from domestic subsidiaries but did not permit a deduction for dividends received from foreign subsidiaries. The court nullified the statute, holding that Iowa's disparate treatment of foreign and domestic subsidiaries constituted facial discrimination against foreign commerce in violation of the Foreign Commerce Clause.

{¶ 11} In comparing R.C. 5733.04 with the statute at issue in *Kraft*, we find that the two statutes do not, in any relevant way, differ in their discriminatory effect. Both laws demonstrate a preference for domestic commerce over foreign commerce, albeit to varying degrees. While R.C. 5733.04 does not, as the Iowa statute did, entirely prohibit the deduction of dividends derived from foreign subsidiaries, this difference in the degree of discrimination has no constitutional significance. When a tax, on its face, has discriminatory economic effects, it is not necessary to consider the extent of the discrimination before finding it unconstitutional under the Commerce Clause. *Fulton Corp. v. Faulkner* (1996), 516 U.S. 325, 333, 116 S.Ct. 848, 855, 133 L.Ed.2d 796, 806, fn. 3; *Associated Industries of Missouri v. Lohman* (1994), 511 U.S. 641, 649-650, 114 S.Ct. 1815, 1822, 128 L.Ed.2d 639, 648; *Maryland v. Louisiana* (1981), 451 U.S. 725, 760, 101 S.Ct. 2114, 2136, 68 L.Ed.2d 576, 604.

{¶ 12} The commissioner attempts to distinguish *Kraft* on the ground that Ohio, unlike Iowa, permits combined-income reporting. See R.C. 5733.052(B);

*Kraft*, 505 U.S. at 74, 112 S.Ct. at 2368, 120 L.Ed.2d at 64, fn. 9. There are two basic systems for reporting income—single entity reporting and combined-income reporting. Under the single-entity reporting system, each subsidiary corporation reports separately. *E.I. Du Pont de Nemours & Co. v. State Tax Assessor* (Me.1996), 675 A.2d 82, 87, fn. 9. In contrast, "[u]nder combined reporting, the income of the members of a unitary business is combined and then apportioned to a particular taxing jurisdiction." *Caterpillar*, *Inc. v. Commr. of Revenue* (Minn.1997), 568 N.W.2d 695, 696. Typically, a corporation and its subsidiaries are deemed to comprise a "unitary business." " 'A multi-state business is a unitary business for income tax purposes when * * * its various parts are interdependent and of mutual benefit so as to form one integral business.' " *In re Appeal of Morton Thiokol*, *Inc.* (1993), 254 Kan. 23, 24, 864 P.2d 1175, 1178. Thus, when a corporation files a combined report, the corporation's income is netted with the apportioned income of its subsidiaries. There are variations of the combination method that differ according to whether foreign members of the unitary business are included in the combined reports. The "domestic combination" method includes only domestic subsidiaries, while the "worldwide combination" method includes foreign subsidiaries. *Id.*, 254 Kan. at 25, 864 P.2d at 1178.

{¶ 13} A number of courts have concluded that the single-entity reporting system involved in *Kraft* raises constitutional concerns that are not present under the domestic-combination system. See, *e.g.*, *id.*, 254 Kan. at 38, 864 P.2d at 1186; *Caterpillar*, 568 N.W.2d at 700-701; *E.I. Du Pont de Nemours*, 675 A.2d at 87; *Caterpillar Fin. Serv. Corp. v. Whitley* (1997), 288 Ill.App.3d 389, 399, 223 Ill.Dec. 879, 680 N.E.2d 1082, 1088. Accordingly, these courts have held that *Kraft* does not apply to the taxation of foreign dividends by domestic combination states. These courts reason that in domestic-combination states, the disparate treatment of foreign and domestic dividends is necessary to produce a kind of "taxing symmetry" that is not present under the single-entity method. See, *e.g.*, *E.I. Du*

*Pont de Nemours*, 675 A.2d at 88; *In re Appeal of Morton Thiokol*, 254 Kan. at 38, 864 P.2d at 1186. In a domestic-combination state, the apportioned earnings of the domestic subsidiaries are taxed as income of the unitary business. Because the state has taxed the earnings out of which dividends are paid, the dividends themselves are not subject to taxation. This prevents dividends from domestic subsidiaries from being taxed twice—once as earnings of the domestic subsidiary and once as separate income to the unitary business. At the same time, the income of foreign subsidiaries is not taxed in a domestic-combination state. Thus, no discrimination results from taxing, in whole or in part, dividends derived from foreign subsidiaries.

**{¶ 14}** Relying upon this reasoning, the commissioner argues that R.C. 5733.04(I)(2)(c) does not discriminate against foreign commerce because Ohio permits combined-income reporting. According to the commissioner, the taxation of domestic subsidiaries under Ohio's combination method more than offsets the fifteen-percent reduction in foreign source dividends. We disagree.

**{¶ 15}** R.C. 5733.052(B) does permit certain corporate taxpayers to combine their net incomes and report as a single, unitary business.[1] However, Ohio's system of combined reporting differs fundamentally from that of other states. In Ohio, the only entities that are permitted to combine net incomes are those having income "from sources within Ohio." As a result, a corporation can file a combined return only for those of its subsidiaries that earn income in Ohio. Subsidiaries that do not earn income in Ohio must file separate returns. With respect to these subsidiaries, Ohio's tax system does not differ from the single-entity reporting method involved in *Kraft*.

**{¶ 16}** Clearly, Ohio's system of combined reporting does not produce the "tax symmetry" that combined reporting produces in other states. Because

---

1. R.C. 5733.052(B) provides that "[a] combination of net income may * * * be made at the election of any two or more taxpayers each having income, other than dividend or distribution income, from sources within Ohio."

domestic subsidiaries that do not earn income from sources within Ohio do not have their income combined with that of the parent company, dividends from these subsidiaries are not at risk of being taxed twice. Under Ohio's tax scheme, the parent company is still permitted to deduct these dividends in full. Yet, at the same time, only eighty-five percent of foreign dividends may be deducted. Such a preference for domestic commerce over foreign commerce cannot withstand constitutional scrutiny.

{¶ 17} For the foregoing reasons, we hold that R.C. 5733.04(I)(2)(c)'s deduction limitation for foreign source dividends unconstitutionally discriminates against foreign commerce in violation of the United States Constitution's Foreign Commerce Clause. We therefore reverse the decision of the BTA.

*Decision reversed.*

MOYER, C.J., PFEIFER and LUNDBERG STRATTON, JJ., concur.

DOUGLAS and RESNICK, JJ., dissent.

COOK, J., dissents.

---

**COOK, J., dissenting.**

{¶ 18} I dissented from this court's recent decision that Ohio's "bad time" law is unconstitutional, noting that the majority in that case failed to acknowledge the axiomatic precepts of judicial restraint applicable to facial challenges. See *State ex rel. Bray v. Russell* (2000), 89 Ohio St.3d 132, 136-137, 729 N.E.2d 359, 362-363 (Cook, J., dissenting). I respectfully dissent from today's decision for similar reasons.

{¶ 19} As I noted in *Bray*, statutes are presumed to be constitutional. *Id.* at 136, 729 N.E.2d at 362. In order for this court to declare otherwise, it must appear beyond a reasonable doubt that the statute is incompatible with particular constitutional provisions. *Id.* at 136-137, 729 N.E.2d at 362-363, citing *State v. Cook* (1998), 83 Ohio St.3d 404, 409, 700 N.E.2d 570, 576. We have previously

recognized that, because of our "judicial obligation * * * to support the enactment of a lawmaking body if this can be done," we will not declare a statute facially unconstitutional unless no set of circumstances exists under which the statute would be valid. *State v. Beckley* (1983), 5 Ohio St.3d 4, 7, 5 OBR 66, 69, 448 N.E.2d 1147, 1149; see, also, *United States v. Salerno* (1987), 481 U.S. 739, 745, 107 S.Ct. 2095, 2100, 95 L.Ed.2d 697, 707.

**{¶ 20}** Without mentioning these precepts, the majority concludes that the United States Supreme Court's decision in *Kraft* compels today's result. *Kraft Gen. Foods, Inc. v. Iowa Dept. of Revenue & Finance* (1992), 505 U.S. 71, 112 S.Ct. 2365, 120 L.Ed.2d 59. But as Chief Justice Rehnquist noted in his dissent in that case, the *Kraft* majority—like the majority here—also failed to acknowledge the petitioner's burden "to demonstrate that there are *no circumstances in which Iowa's statute could be constitutionally applied*." (Emphasis added.) *Id.* at 84-85, 112 S.Ct. at 2373, 120 L.Ed.2d at 71 (Rehnquist, C.J., dissenting).

**{¶ 21}** Even assuming, *arguendo*, that Kraft met its burden in that case, I cannot say that Emerson Electric Company has done so here. The majority accepts Emerson's contention that because domestic dividends may be deducted in full, "[y]et * * * only eighty-five percent of foreign dividends may be deducted," R.C. 5733.04(I)(2)(c) unconstitutionally discriminates against foreign commerce. But the majority's analysis bypasses the portion of the statute that expressly permits the taxpayer to establish that this "deemed" amount of deductible foreign dividends is actually larger. See R.C. 5733.04(I)(2)(c). Theoretically, the application of the statute could result in *no limit* to the foreign source dividend deduction, and hence no discrimination. It would seem that "the existence of such a possibility should be fatal to [Emerson's] chances of success" in a facial challenge. *Kraft*, *supra,* 505 U.S. at 85, 112 S.Ct. at 2373, 120 L.Ed.2d at 71 (Rehnquist, C.J., dissenting).

_____